421 S.E.2d 223

Jack L. BALL, Kathryn Culp, Diane Davis, Regina Hardman, Lloyd J. Leggett, Laura Lightner, Tametta J. Richards, Danny Sigley, and Anna Smucker, Plaintiff Below, Appellants,

v.

LIFE PLANNING SERVICES, INC., Defendant Below, Appellee.

No. 20531.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1992.

Decided July 15, 1992.

Thomas C. Cady, Morgantown, for appellants.

Boyd L. Warner, Scott E. Wilson, Francis L. Warder, Waters, Warner & Harris, Clarksburg, for appellee.

BROTHERTON, Justice:

The question now before this Court is whether a civil action which alleges insurer liability under W.Va.Code §§ 33–12–21 and 33–11–4(9) is pre-empted by the federal Employee Retirement Income Security Act of 1974 (ERISA).

The appellants are nine employees of the Clarksburg/Harrison County Public Library who appeal from an October 24, 1990, order of the Circuit Court of Harrison County dismissing their complaint against the appellee, Life Planning Services, Inc. (LPS), a West Virginia corporation licensed to do business as an independent insurance agency.

In February, 1988, LPS presented the appellants' employer with an employee wel-

fare benefit plan known as Group Rental Insurance Plan Medical Trust ("GRIP Medical Trust"), which was sponsored by Rental Associates, Inc. This plan provided group term life and accidental death and dismemberment coverage, medical, surgical and hospital coverage, and dental coverage.[1] On February 4, 1988, the appellants' employer executed a Participation Agreement requesting membership as a participating employer in Rental Associates, Inc., as well as coverage under the GRIP Medical Trust, and permission to make contributions to the trust for its employees. The request was approved, and coverage became effective on March 1, 1988.

The appellants claim that Rental Associates, Inc., is a Massachusetts insurance company which is not licensed to transact business in West Virginia, and allege further that in January or February, 1989, Rental Associates began to refuse to pay covered medical expenses. The appellees admit that claims for the period from approximately January 1, 1989, through May 31, 1989, were not paid by the GRIP Medical Trust.

The appellants filed suit against LPS on May 7, 1990, charging that LPS's refusal to pay benefits was malicious, intentional, willful, wanton, and reckless, and in violation of W.Va.Code §§ 33–12–21 and 33–11–4(9). The latter section relates to unfair claim settlement practices, while W.Va. Code § 33–12–21 (1992) imposes personal liability upon an agent or broker under certain circumstances by providing that:

Any agent or broker who participates directly or indirectly in effecting any insurance contract, except authorized reinsurance, upon any subject of insurance resident, located or to be performed in this State, *where the insurer is not licensed to transact insurance in this State,* shall be personally liable upon such contract as though such agent or broker were the insurer thereof. This section shall not apply to excess line insurance procured in the manner provided in sections ten to seventeen [§§ 33–12–10 to 33–12–17], inclusive, of this article, nor to ocean marine insurance or marine protection and indemnity insurance. (Emphasis added.)

The appellants demanded judgment against LPS for policy proceeds totalling $21,229.37, as well as $20,000 for each plaintiff for costs and $20,000 in punitive damages for each plaintiff.

At a hearing on September 20, 1990, the appellee moved to dismiss the appellants' claims on grounds that the appellants' comprehensive medical insurance plan was an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002, and that provisions of ERISA supersede and pre-empt state laws relating to any employee benefit plan.

In an order dated October 24, 1990, the Circuit Court of Harrison County concluded that the appellants' claims against LPS were pre-empted by ERISA, citing the

---

1. According to the respondent's brief, GRIP Medical Trust was a qualified ERISA trust sponsored and established by Rental Associates, Inc., to provide hospitalization and medical benefits for members and their employees. The GRIP Medical Trust was funded by payments made by members and their employees to Rental Associates, Inc. No plan payments were made directly to Life Planning.

At the time the plaintiffs' coverage went into effect, the hospitalization and medical benefits were partly self-funded and partly insured. The hospitalization and medical benefits were self-funded by the GRIP Medical Trust for each individual up to $50,000 of eligible expenses in any one plan year with coverage in excess of that amount provided by Life Insurance Company of North America, a Cigna company. Life Insurance Company of North America, a Cigna

company, was authorized to transact insurance business in the State of West Virginia at the time the plaintiffs enrolled in the GRIP Medical Trust. The policyholder of the excess insurance was Rental Associates, Inc., a corporation which was not licensed to transact insurance business in the State of West Virginia. The Third Party Administrators, Inc. ("T.P.A., Inc."), was the plan administrator of the GRIP Medical Trust which provided claims processing and other administrative services on a contract basis to the trust. T.P.A., Inc., is a corporation. However, it is not licensed to transact insurance business in the State of West Virginia.

On or about July 15, 1988, the plaintiffs' employer and the defendant were notified by Rental Associates, Inc., that effective May 1, 1988, all medical benefits are reinsured from first dollar with Arizona Life Reinsurance Company.

United States Supreme Court's decision in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and 29 U.S.C. § 1144(a). The lower court dismissed the appellants' complaint with leave to amend in order to allege an ERISA cause of action.

On appeal, the appellants argue simply that their claim was not pre-empted by ERISA because it was not an ERISA claim that was asserted against an ERISA fiduciary seeking ERISA relief, but was instead a state law-based insurance claim against an agent or broker, seeking state law-based remedies.

ERISA is "a startlingly sweeping and complex federal statute,"[2] enacted by Congress in order to

> protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).

ERISA protects two types of employee benefit plans: "welfare benefit," like the one which is at issue in this case, as well as "pension benefit" plans. ERISA comprehensively regulates employee welfare benefit plans that "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death. 29 U.S.C. § 1002(1).

However, ERISA does not dictate what types of benefits and services an employee benefit plan must contain or otherwise regulate the substantive content of such plans in any manner. Instead, ERISA's purpose is to impose "standards of fiduciary responsibility upon plan fiduciaries and administrators, which are directed toward plan par-

ticipants and to the plan itself. ERISA also requires plan administrators to report to the Labor Department, and to disclose plan terms to participants."[3]

State insurance laws govern the substantive content of insured welfare benefit plans. "For example, a state law requiring all group health insurance policies to include mental health benefits substantively regulates welfare benefit plans. Thus, ERISA and state insurance laws regulate insured welfare benefit plans simultaneously—ERISA creates fiduciary, reporting and disclosure standards while state insurance laws govern plan content."[4]

There are three major provisions in ERISA which explain and qualify its pre-emptive effect. First, the "pre-emption clause," 29 U.S.C. § 1144(a), provides that:

> Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

Thus, if a state law merely "relate[s] to" an employee benefit plan, then the state law is pre-empted by ERISA. However, the broad pre-emptive effect of this clause is itself limited by several provisions in subsection (b). For example, the "saving clause," 29 U.S.C. § 1144(b)(2)(A), states that:

> Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

The "deemer clause," 29 U.S.C. § 1144(b)(2)(B), then limits the "saving clause," providing that:

> Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust

**2.** Robert L. Aldisert, Note, *Blind Faith Conquers Bad Faith: Only Congress Can Save Us After Pilot Life Insurance Co. v. Dedeaux,* 21 Loy. L.A.L.Rev. 1343, 1345 (1988).

**3.** Aldisert, *supra* note 2 at 1350, 1351.

**4.** Aldisert, *supra* note 2, at 1351.

company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

In this case, the petitioners seek damages from the respondent, LPS, for violations of both W.Va.Code § 33–12–21 and § 33–11–4(9). The question before us is whether the petitioners' causes of action under these statutes are pre-empted by ERISA.

As we noted above, ERISA's pre-emption clause will pre-empt a state law if the state law relates to an employee welfare benefit plan, unless it falls within one of the exceptions. The phrase "relate[s] to" has been interpreted by the United States Supreme Court in two leading cases: *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), and *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

In *Alessi*, retirees received pension benefits which were offset by the amounts they received from workers' compensation. This was referred to as the "integration" method for calculating pension benefits. New Jersey subsequently amended its workers' compensation law and prohibited these offsets, but they were permitted by ERISA.

The retirees filed suit, alleging that the employers were operating the plan in violation of New Jersey law. They also maintained that ERISA did not pre-empt New Jersey law because the law was a workers' compensation law rather than a pension law. Therefore, they argued that the New Jersey law did not "relate to" an employee welfare benefit plan within the meaning of the pre-emption clause. The United States Supreme Court disagreed.

It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of

exclusive federal concern ... ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision. *Id.* 451 U.S. at 525, 101 S.Ct. at 1907.

Thus, the Supreme Court found that the New Jersey law directly conflicted with and was pre-empted by ERISA. However, the Court did not find it necessary to "determine the outer bounds of ERISA's pre-emptive language...." *Id.*

Instead, the scope of the ERISA pre-emption clause was examined further in *Shaw v. Delta Air Lines, supra,* which involved New York's Human Rights Law. The New York Court of Appeals held that employers engaged in sex discrimination, within the meaning of that law, when they treated pregnancy differently from other nonoccupational disabilities in the context of employee benefit plans.

The United States Supreme Court found that given the broad meaning of the phrase "relate to", New York's Human Rights Law related to employee benefit plans within the meaning of the pre-emption clause. A unanimous Supreme Court explained that a state law "relates to" an ERISA plan if the law merely has a "connection with or reference to such a plan," rejecting the narrower *Alessi* interpretation that the pre-emption clause encompassed only state laws in direct conflict with ERISA provisions. *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. However, the Court noted that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100, n. 21, 103 S.Ct. at 2901, n. 21.

West Virginia Code § 33–12–21 imposes personal liability upon "[a]ny agent or broker who participates directly or indirectly in effecting any insurance contract, except authorized reinsurance, upon any subject of insurance resident, located or to be performed in this State, where the insurer is not licensed to transact insurance in this State...." Because any effect this statute might have on an employee welfare benefit plan would be tenuous and remote at best,

we conclude that the statute does not "relate to" an employee welfare benefit plan within the meaning intended by the use of that phrase in § 1144(a) of the federal Employee Retirement Income Security Act of 1974 (ERISA). Therefore, actions brought against agents or brokers under this statute are not pre-empted by ERISA.

In many cases in which courts have found pre-emption of a state action, the action arose from the alleged wrongful termination or denial of benefits.[5] Quite obviously, the case now before us was also initiated as a result of a refusal to pay benefits. However, for our purposes in determining ERISA's pre-emptive power with respect to W.Va.Code § 33–12–21, this refusal to pay benefits becomes a separate matter and has no effect on the appellants' claim that the appellee, LPS, is subject to personal liability for brokering an insurance contract with an unlicensed insurer in violation of W.Va.Code § 33–12–21.

While we find that the appellants' claim under W.Va.Code § 33–12–21 is not pre-empted by ERISA, we reach the opposite conclusion with respect to their claim under W.Va.Code § 33–11–4(9). This claim relates to unfair claim settlement practices and is clearly the same type of claim that the United States Supreme Court found to be pre-empted by § 514(a) of ERISA in *Pilot Life Insurance Co. Dedeaux.* The appellants offer no argument, and thus apparently concede this point.

For the foregoing reasons, the October 24, 1990, order of the Circuit Court of Harrison County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

---

**5.** Caroline Wrenn Cleveland, Note, *ERISA Preemption: As the Federal Courts Identify the Outer Boundaries of ERISA's Preemption Clause,* *What are the Implications for South Carolina State Actions?,* 42 S.C.L.Rev. 743, 764 (1991).