**TRI–STATE MACHINE, INCORPO-
RATED, Plaintiff–Appellant,**

v.

**NATIONWIDE LIFE INSURANCE
COMPANY, Defendant–
Appellee.**

**No. 93–1971.**

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1994.

Decided Aug. 31, 1994.

---

**310**

win Port, Chorpenning, Good & Mancuso Co., L.P.A., Columbus, OH, for appellee. **ON BRIEF:** James W. Forsyth, Buchanan Ingersoll Professional Corporation, Pittsburgh, PA; Ray A. Byrd, Schrader, Recht, Byrd, Byrum & Companion, Wheeling, WV, for appellant. Philip F. Brown, Chorpenning, Good & Mancuso Co., L.P.A., Columbus, OH, for appellee.

Before NIEMEYER and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Senior Judge PHILLIPS joined. Judge LUTTIG wrote a separate dissenting opinion.

## OPINION

NIEMEYER, Circuit Judge:

We are presented with the issue of whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, preempts state law claims of Tri–State Machine, Inc., for improper claims processing and mismanagement against Nationwide Life Insurance Company. Nationwide Life issued and administered a group insurance policy to provide health care benefits for Tri–State's employees under an employee benefit plan. The district court ruled that Tri–State's state law claims were preempted by ERISA and, upon Tri–State's failure to amend its complaint to state a claim under ERISA, dismissed the action. Tri–State contends on appeal that it is a "mere purchaser" of insurance and that its claims against Nationwide Life are not preempted by ERISA because they do not "relate to" an employee benefit plan. Tri–State also contends that its claims are based on state laws regulating insurance, which are saved from preemption under § 514(b)(2)(A) of ERISA. For the reasons that follow, we conclude that the district court properly held that all of Tri–State's state law claims are preempted by ERISA and affirm.

**ARGUED:** David B. Fawcett, III, Buchanan Ingersoll Professional Corporation, Pittsburgh, PA, for appellant. Gregory Dar-

## I

The employee benefit plan of Tri–State Machine, Inc., provides medical, disability, dental, and death benefits to Tri–State employees and their beneficiaries. The terms of the plan give participants notice that the plan is governed by ERISA and that they are entitled to certain rights and protections under ERISA. Until 1989, the plan was insured and administered by Nationwide Life Insurance Company under a group policy and under a Cash Priority Plan Funding Agreement between Nationwide Life and Tri–State. Under the agreement, claims for benefits were self-funded by Tri–State up to a $25,000 limit for each employee for each year, beyond which Nationwide Life agreed to pay claims under stop-loss insurance. All claims by employees were to be submitted to Nationwide Life, who reserved the right to determine whether the claims were payable. Nationwide Life provided monthly reports to Tri–State detailing Tri–State's liability under the agreement. Nationwide Life entered into a subcontract with First Benefits Agency, Inc., to administer the plan.

Effective July 1, 1989, Nationwide Life terminated its arrangements with Tri–State. Alleging that Nationwide Life mismanaged and improperly carried out its claims processing responsibilities under the policy and agreement, Tri–State filed suit in the West Virginia Circuit Court of Ohio County in February 1990, alleging breach of contract, breach of implied covenants of good faith and fair dealing, bad faith tort, insurance bad faith and violation of the West Virginia Unfair Trade Practices Act, W.Va.Code §§ 33–11–1 through 33–11–10. Tri–State asserted that Nationwide Life failed to administer the plan according to the terms of the agreement and mismanaged the claims processing procedures by paying claims to wrong medical providers, by issuing coverage cards in the names of employees never associated with Tri–State, by charging claims to accounts of individuals who had not submitted claims, by paying claims not covered, by denying claims that were covered, and by requesting reimbursement from Tri–State for claims improperly paid. Tri–State also charged that Nationwide Life delayed processing of claims in a year during which Tri–State had met its stop-loss liability, deflecting claims into a new policy year so that claims would become the obligations of Tri–State by reason of the annual self-funding limit of $25,000 for each employee.

Nationwide Life removed the case to the federal district court on diversity grounds and also on grounds that the claims were preempted by ERISA. On Tri–State's motion for partial summary judgment to declare that ERISA did not preempt its state law claims, the district court denied the motion and held that "ERISA preempts all of Tri–State's claims based upon West Virginia laws relating to the health insurance plan upon which its complaint is based." The court held specifically that 29 U.S.C. § 1144(a) preempts all of Tri–State's claims and that the exception to preemption contained in 29 U.S.C. § 1144(b)(2)(A), known as the Savings Clause, did not apply because the "Deemer Clause," contained in § 1144(b)(2)(B), excludes from the Savings Clause self-funded benefit plans. The court found that the plan in this case was a self-funded plan and that the stop-loss insurance for coverage above the self-funded amounts did not "change this outcome." Thereafter the court ordered Tri–State to notify the court whether it intended to pursue the case under ERISA. Although Tri–State indicated its intention to do so, it never amended its complaint to state a claim under ERISA, and the district court dismissed the complaint. This appeal followed.

## II

We are presented with the legal issue of whether Tri–State's state law claims, arising out of allegedly wrongful claims processing by Nationwide Life, are preempted by ERISA. Since the question is one of law, we will review the district court's orders *de novo*.

ERISA's preemption clause provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar *as they may now or hereafter relate to any employee benefit plan* . . . .

29 U.S.C. § 1144(a) (emphasis added). This clause has been broadly interpreted by the courts to carry out Congress' intent to displace any state law efforts to regulate ERISA matters. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) ("the pre-emption clause is conspicuous for its breadth"); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) ("the section's pre-emptive scope [is] as broad as its language"); *Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 418 (4th Cir.1993) ("it is frequently observed that the force of ERISA's preemption is strong and its scope wide"). Thus, any law "that relates to" a plan is preempted by 29 U.S.C. § 1144(a), and the phrase "relates to" is given its common sense meaning, as having "connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900.

Although ERISA's preemptive sweep is broad, the "Savings Clause" contained in 29 U.S.C. § 1144(b)(2)(A), which saves from preemption state laws that regulate insurance, is stated almost as broadly. This clause preserves for state regulation any law "which *regulates insurance,* banking, or securities." 29 U.S.C. § 1144(b)(2)(A) (emphasis added). In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739–40, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), the Supreme Court construed the Savings Clause to apply only to state laws regulating core insurance issues. Considering a complex state statutory scheme which regulated, among other things, the substantive content of health insurance policies, the Supreme Court held that state insurance regulations that mandate particular policy benefits are saved from preemption by the Savings Clause. It concluded that Congress intended to save from preemption only those state laws that regulate the traditional business of insurance to the extent that it involves contractual arrangements for protection against financial loss through the spreading of risk. To guide this inquiry, the Court put forth the following three-part test developed under the McCarran–Ferguson Act:

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is

an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

471 U.S. at 743, 105 S.Ct. at 2391 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)). Thus, a claim based on state law or regulation that regulates the business of insurance as defined by *Metropolitan Life*'s three-part test is "saved" from preemption by virtue of the Savings Clause, § 1144(b)(2)(A), even if the claim "relates to" an employee benefit plan within the meaning of § 1144(a).

ERISA takes the further step of limiting the Savings Clause by stating that an employee welfare benefit plan itself is not, under state law, to be "deemed" an insurance company for purposes of the Savings Clause. This so-called "Deemer Clause" provides:

> *Neither an employee benefit plan* ... nor any trust established under such a plan, *shall be deemed to be an insurance company,* or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law or any State purporting to regulate insurance companies, insurance contracts....

29 U.S.C. § 1144(b)(2)(B) (emphasis added). The Deemer Clause has been interpreted by the Supreme Court "to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause." *FMC Corp. v. Holliday,* 498 U.S. at 61, 111 S.Ct. at 409. The Court reasoned that "[b]y forbidding States to deem employee benefit plans 'to be an insurance company or other insurer ... or to be engaged in the business of insurance,' the deemer clause relieves plans from state laws 'purporting to regulate insurance.' " *Id.* Thus, "[s]tate laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws." *Id.*

While *Metropolitan Life* placed state insurance regulations mandating particular insurance policy benefits within the area pre-

served for state regulation, the Supreme Court in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), held that state insurance law regulating *claims processing* did not regulate the "business of insurance" and therefore, was not saved from preemption.  In *Pilot Life,* an injured employee sued the insurance company that issued and administered his employer's disability plan, asserting improper acts in connection with the processing of a claim for benefits.  The suit was based on state common law tort and contract principles. The Supreme Court concluded as a first step that "common law causes of action raised in Dedeaux's complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a) [29 U.S.C. § 1144(a) ]." *Id.* at 48, 107 S.Ct. at 1553.  The Court then proceeded to determine whether such claims against an insurance company for improper claims processing fell within the Savings Clause.  Applying the test of *Metropolitan Life,* the Court concluded that such claims were not made under state laws regulating the core insurance business and therefore were not saved by the Savings Clause.  Consequently, the state law claims were held to be preempted.   481 U.S. at 57, 107 S.Ct. at 1558.

In *Custer v. Pan American Life, supra,* we applied the *Pilot Life* holding to conclude that the West Virginia Unfair Trade Practices Act, which regulates insurance companies by prohibiting certain unfair trade and settlement practices, was not saved from preemption.  Accordingly, we held that claims made under the West Virginia law relating to an insurance company's improper claims processing or administration of an employee benefit plan were preempted.  The West Virginia Supreme Court, also relying on *Pilot Life,* had earlier reached the same conclusion.  *See Ball v. Life Planning Services, Inc.,* 187 W.Va. 682, 421 S.E.2d 223, 227 (1992) (holding that an action under subsection 9 of West Virginia Code 33–11–4 is preempted under ERISA).  *See also Powell v. Chesapeake & Potomac Telephone Co.,* 780 F.2d 419, 423–24 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (concluding, in a case decided before *Pilot Life* but consistent with it, that an action alleging improper claims processing is not saved from preemption because it does not regulate the business of insurance under ERISA).

With these principles in mind, we turn to the issues before us.

## III

Tri–State contends that the state law claims alleged in its complaint are not preempted by ERISA, relying on two different theories.   First, it argues that it is a "mere purchaser" of insurance and that therefore the claims arising from its status as a mere insurance purchaser are not "related to" an employee benefit plan within the preemption clause of ERISA, 29 U.S.C. § 1144(a).  Tri–State also argues that since its claims arise under the West Virginia Unfair Trade Practices Act, which regulates insurance companies, they are preserved to state regulation under the Savings Clause of ERISA, 29 U.S.C. § 1144(b)(2)(A).  To support its second argument, Tri–State points to W.Va.Code § 33–11–1, which states that the purpose "of this article ... [is] to regulate trade practices *in the business of insurance* " (emphasis added).

■ Tri–State's first argument will not detain us long, since the broad sweep of 29 U.S.C. § 1144(a) provides for preemption of claims under any state law that "relate to any employee benefit plan."  No serious argument is made that the package of health care benefits provided by Tri–State to its employees through the policy purchased from Nationwide Life is not a plan.   In addition to the fact that the plan's language announces participants' rights under ERISA, the nature of the arrangement, which provides benefits paid for by the employer to employees and their beneficiaries in connection with their employment, meets the criteria defining a plan under ERISA.   *See* 29 U.S.C. § 1002(1);  *Custer,* 12 F.3d at 417.

Moreover, there can be little doubt that the claims *relate to* the plan.  Tri–State's complaint particularizes a list of wrongs committed by Nationwide Life, including its pay-

ing claims to wrong medical providers, issuing coverage cards in the names of employees never associated with Tri–State, charging claims to accounts of individuals who had not submitted claims, paying claims not covered, denying claims that were covered, and delaying processing of claims in a year when the stop-loss limit had been reached in order to deflect them into a new policy year to be charged against Tri–State under its self-funding obligations. All of these allegations are essentially complaints about the processing of claims under an employee benefit plan and, therefore, *relate to* the plan in the common sense meaning of that phrase. Indeed the Supreme Court in *Pilot Life·* specifically stated: "The common law causes of action raised in *Dedeaux*'s complaint, *each based on alleged improper processing of a claim* for benefits under an employee benefit plan, undoubtedly meet the criteria for preemption under § 514(a)." 481 U.S. at 48, 107 S.Ct. at 1553 (emphasis added). ·*See also Custer,* 12 F.3d at 420.

◼ Concluding that Tri–State's claims relate to an employee benefit plan and thus fall under ERISA's broad preemption provision of 29 U.S.C. § 1144(a) does not, however, end the inquiry. Tri–State's second argument is that because its claims fall under the West Virginia Unfair Trade Practices Act, W.Va. Code §§ 33–11–1 through 33–11–10, establishing unfair trade practices in the business of insurance, its state law claims are preserved from federal preemption under the Savings Clause. The question thus presented is whether the trade practices identified in the West Virginia Act regulate the business of insurance as that phrase is used in ERISA, 29 U.S.C. § 1144(b)(2)(A), and interpreted in *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 (establishing the three-prong test for determining whether a state law regulates the *business of insurance* ).

The Unfair Trade Practices Act, Article 11 of the Insurance chapter of the West Virginia Code, specifically attempts to place itself within the meaning of "business of insurance" as defined by the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.* The first section of the article states:

The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the act of Congress of March ninth, one thousand nine hundred forty five (Public Law fifteen, seventy-ninth Congress) [the McCarran–Ferguson Act], by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

W.Va.Code § 33–11–1. Since the term "business of insurance" in the McCarran–Ferguson Act has been adopted as the basis for defining the scope of the Savings Clause of ERISA, *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 Tri–State argues that the West Virginia regulation of insurance fits into the exception to ERISA's broad preemption, even though the West Virginia Act, having been enacted before the federal statute, is not adopted in response to ERISA. Although the argument has some logical appeal, further analysis reveals a superficiality that fails to take into account the substance of the Unfair Trade ·Practices Act.

The Act provides a long list of prohibited acts in the marketing, selling, and administering of insurance in West Virginia. It prohibits false or misleading statements or advertising as to the contents of a policy and also prohibits engaging in unfair settlement practices, in an apparent effort to provide truth in insurance advertising and fairness in insurance administration. *See, e.g.,* W.Va. Code §§ 33–11–3 & 33–11–4. The Act prohibits many of the practices alleged by Tri–State in its complaint to constitute improper claims processing. But this type of regulation is not unique to the business of insurance, and it does not target, at least in these provisions, the core business of insurance which involves contracts of protection under which risk is spread among policy holders.

We recently interpreted this precise statute and concluded that since the West Virginia Unfair Trade Practices Act does not simply regulate the business of insurance as defined in *Metropolitan Life,* it is not saved from preemption in connection with claims

relating to an employee benefit plan. *See Custer,* 12 F.3d at 419–421. In *Custer,* an insurance company issued a policy to an employer and administered it as part of an employee benefit plan. When the plaintiff sued the insurance company for denying benefits and canceling the policy, allegedly in violation of West Virginia law, we concluded that the claims were preempted, holding "that Custer's claims under West Virginia law relating to improper claims processing or administration are not saved from preemption by the savings clause." 12 F.3d at 420. We concluded that our decision was directly controlled by the Supreme Court's holding in *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554 (holding that state law improper claims processing actions are not directed at the insurance industry alone and do not relate to the spreading of risk), and this court's holding in *Powell,* 780 F.2d at 423–24 (concluding that an action alleging improper claims processing is not saved from preemption because it does not regulate the business of insurance under ERISA).

The holding in *Custer* applies here to require a determination that Tri–State's claims are also not saved from preemption under § 1144(b)(2)(A). *See also Ball v. Life Planning Services, Inc.,* 187 W.Va. 682, 421 S.E.2d 223, 227 (1992) (holding that West Virginia Code § 33–11–4(9) relates to unfair claims settlement practices and therefore is the same type of claim that the Supreme Court found to be preempted by ERISA in *Pilot Life* ).

■ The district court also found an alternative basis to hold that Tri–State's state law claims were preempted. It concluded that even if Tri–State's claims fell within the Savings Clause, the employee benefit plan involved here would be regulated by ERISA, and not state law, under the Deemer Clause. The district court concluded that the group health insurance plan issued by Nationwide Life and sponsored by Tri–State was a self-funded plan, and thus under the Deemer Clause of ERISA, it was not subject to regulation under state law purporting to regulate the business of insurance. *See FMC Corp.* 498 U.S. at 61, 111 S.Ct. at 409. It appears from our review of the plan documents that the plan was indeed a self-funded one for the most part, with stop-loss insurance to cover an individual's claims in excess of $25,000. Tri–State's complaint alleges as much: "Under the policy, Tri–State was self-insured for certain portions of benefits payable under the group health insurance plan." Complaint ¶ 8. We have held previously that the purchase of stop-loss insurance does not convert a self-funded plan to an insured plan for preemption purposes. *See Thompson v. Talquin Building Products Co.,* 928 F.2d 649, 653 (4th Cir.1991). Accordingly, the district court correctly held that the plan was self-funded and that the Deemer Clause of ERISA would also apply to preempt Tri–State's claims.

## IV

Finally, Tri–State contends that the district court "improperly dismissed Tri–State's suit in its entirety because Tri–State's complaint must necessarily state a cause of action under ERISA or federal common law." The difficulty with the contention is the underlying assumption that somehow Nationwide Life or the district court was required to identify and define Tri–State's claim when Tri–State itself refused to do so over a two-year period. The district court carefully reviewed the procedural steps taken by Tri–State and concluded, in essence, that Tri–State simply failed to prosecute its case under ERISA. On a review of the record, we cannot say that the district court abused its discretion in bringing this tortured pleading battle to an end.

After the case was removed from state court on the basis of diversity jurisdiction and ERISA preemption, Tri–State sought to remand the action. When the district court denied its motion, Tri–State filed a motion for partial summary judgment declaring that ERISA did not preempt Tri–State's state law claims. By a Memorandum Opinion and Order dated September 23, 1991, the district court concluded that the state law claims were preempted and denied Tri–State's motion to declare otherwise. Shortly thereafter, Tri–State filed a motion for reconsideration and requested, alternatively, that the court make the necessary finding to permit it

to seek appellate review under 28 U.S.C. § 1292(b). The district court denied the motion for reconsideration, observing that nothing new had been presented by Tri–State, but it did give Tri–State the opportunity to seek leave to appeal under 28 U.S.C. § 1292(b). In its petition for permission to appeal, Tri–State claimed that its case was "simply a breach of contract and an independent tort case" and "Never did the plaintiff [Tri–State] intend to involve, nor does the complaint affect, ERISA issues." When this court summarily denied permission to appeal, Tri–State petitioned the district court to vacate and re-enter its order denying reconsideration of its ERISA preemption ruling, believing that Tri–State's late filing of a petition to appeal was the basis for denial of permission. The district court refused Tri–State's request and ordered that Tri–State inform the court whether it intended to pursue an action under ERISA. On June 8, 1992, plaintiff filed a notice in which it informed the court that Tri–State "intends to pursue this action under ERISA." Tri–State, however, did not file an amended complaint to state any claim under ERISA. Rather, over five months later, it filed another motion to obtain from the court a certification under Federal Rule of Civil Procedure 54(b) that the district court's preemption ruling was final. At that time, Tri–State again argued the preemption issue and sought to amend three paragraphs of its complaint to enhance its effort to circumvent ERISA preemption. The amendments sought were not substantive and would only have altered Tri–State's characterization of the parties' roles. Because Tri–State failed to prosecute the case through the filing of an ERISA claim, and only pursued alternative avenues to challenge the district court's ruling, the district court concluded, again reviewing the merits of the preemption issue:

> In that this issue [ERISA preemption] has been repeatedly and exhaustively briefed, in that Tri–State has fully defended and has presented all material pertinent to its claim, and since Tri–State has failed to seek leave to amend its complaint to assert an ERISA claim, the Court hereby GRANTS summary judgment *sua sponte* for Nationwide, and hereby DISMISSES this action.

Against this procedural history, the district court had a well-founded basis to conclude that Tri–State was only interested in obtaining appellate review of the preemption issue and that, by not pursuing an ERISA claim, Tri–State was staking the success of its action solely on the question of whether its state law claims survived. The district court's decision to dismiss the complaint in these circumstances was not an abuse of discretion. Accordingly, we affirm.

*AFFIRMED.*

LUTTIG, Circuit Judge, dissenting:

The majority holds that the unfair trade practices article of the West Virginia insurance code, which was enacted "to regulate trade practices in the business of insurance," W.Va.Code § 33–11–1, is not a state "law ... which regulates insurance," 29 U.S.C. § 1144(b)(2)(A). Thus, it concludes, Tri–State's improper claims processing action under that statute is not saved from preemption. According to the majority, this result is dictated by our recent decision in *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410 (4th Cir.1993), in which we interpreted the Supreme Court's decision in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), as holding that all state improper claims processing actions filed against an insurance company are not saved from preemption. In my view, *Pilot Life* did not sweep quite so broadly, and applying here the saving clause analysis undertaken by the Supreme Court in *Pilot Life* requires us to hold that Tri–State's state action *is* saved from preemption. Accordingly, I dissent.

In *Pilot Life*, the Supreme Court addressed whether ERISA preempts a beneficiary's or participant's cause of action for improper claims processing brought under Mississippi's common law of bad faith, holding that the action was not saved from preemption under ERISA's "saving clause," 29 U.S.C. § 1144(b)(2)(A). In reaching this conclusion, the Court first determined that a "common-sense understanding" of the language of the saving clause confirms that a state law only "regulates insurance" when it is "specifically directed toward th[e insurance] industry." 481 U.S. at 50, 107 S.Ct. at

1554. Applying this commonsense understanding of the clause's text, it concluded that the Mississippi common law of bad faith does not regulate insurance, because it is rooted in general principles of Mississippi tort and contract law. *Id.* It next reviewed Mississippi's bad faith doctrine under the three criteria the Court employs to interpret the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*, and found that these factors also did not support a conclusion that the Mississippi law "regulates insurance." 481 U.S. at 50–51, 107 S.Ct. at 1554–55. And finally, the Court looked to the "role of the saving clause in ERISA as a whole," *id.* at 51, 107 S.Ct. at 1555, concluding that Congress intended as exclusive the civil remedies that ERISA provides to *beneficiaries* and *participants* alleging improper claims processing. *Id.* at 52–57, 107 S.Ct. at 1555–58.

Only last term, in *Custer*, we considered whether ERISA preempted a beneficiary's improper claims processing action brought under West Virginia's insurance code, *see* W.Va.Code § 33–11. In that case, we assumed, mistakenly I believe, that *Pilot Life* broadly held that all "state cause[s] of action for improper claims processing filed against an insurer [are] not saved from preemption under § 1144(a)." 12 F.3d at 420. Proceeding on this assumption as to the scope of *Pilot Life*, we reasoned that *Pilot Life* directly controlled Custer's West Virginia action, which was filed against an insurance company for improper claims processing, and, without even engaging in the actual *Pilot Life* analysis, held that Custer's state action was not saved from preemption.*

Now, relying on *Custer*'s assumption that the *Pilot Life* holding extended to all state law improper claims processing actions, and again largely ignoring the three-step saving clause analysis employed by the Court in *Pilot Life*, the majority summarily concludes in this case that *Custer* requires a holding that Tri–State's improper claims processing action is not saved from preemption.

In my view, the Supreme Court did not hold in *Pilot Life* that all state actions for improper claims processing fall outside the saving clause. The only question before the Court in *Pilot Life* was whether a claim by a *beneficiary* or a *participant* under *a state common-law doctrine of bad faith* (indeed, only Mississippi's law) was saved from preemption. In deciding that it was not, the Supreme Court neither addressed state improper claims processing actions by parties other than beneficiaries and participants or different actions brought under other state laws.

In *Custer*, our mistake was immaterial because the *beneficiary*'s cause of action there in question was one specifically identified by the Court in *Pilot Life* as governed exclusively by ERISA. 481 U.S. at 56, 107 S.Ct. at 1557. Thus, our holding that Custer's cause of action was preempted was correct notwithstanding our misapprehension of the contours of the *Pilot Life* holding and our attendant failure to engage in the full inquiry undertaken by the Court in *Pilot Life*. Here, however, the majority is not saved by happenstance.

---

* We also concluded in *Custer* that the case was controlled by our decision in *Powell v. Chesapeake & Potomac Telephone Co. of Virginia*, 780 F.2d 419, 423 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). In *Powell*, we addressed a beneficiary's state law claims against her former employer and the insurance company that administered the employer's uninsured ERISA plan for maladministration of her benefits claims. We held that each of Powell's state law claims related to the employer's ERISA plan, and were therefore preempted. In a passage relied on by the majority for the proposition that improper claims processing actions are pre-empted, *ante* at 314–15, we rejected Powell's argument that her claim against Connecticut General, the plan's administrator, was saved from pre-emption because it was brought under a state law that regulated insurance. *Id.* at 423–24. Although Connecticut General is, in fact, an insurance company, we held that, in its capacity as administrator, it was not at all engaged in the "business of insurance" but rather served purely administrative functions, and therefore that the state law, as applied to Connecticut General, did not constitute a state regulation of insurance that was saved from preemption. *Id.*

Our holding in *Powell* turned, therefore, on the fact that Connecticut General was not engaged in the business of insurance, rather than on the fact that Powell's action was for improper claims processing. That an insurance company that administers but does not insure an ERISA plan is not engaged in the business of insurance for purposes of the saving clause hardly bears on this case, since Nationwide, which provided TriState with stop-loss insurance, obviously was engaged in the business of insurance.

Unlike in *Pilot Life,* a "common-sense understanding" of the statutory text, 481 U.S. at 50, 107 S.Ct. at 1554, does support the argument that the West Virginia law before us "regulates insurance." If any law can be said to be "specifically directed toward th[e insurance] industry," *id.,* it is this statute, which, by terms, was enacted to, and does," regulate trade practices in the business of insurance...." W.Va.Code § 33–11–1.

Also here, unlike in *Pilot Life,* the West Virginia statute as applied to Tri–State's action (and, in my view, to the action in *Custer)* regulates "the business of insurance" under the McCarran–Ferguson Act. 15 U.S.C. § 1012. Tri–State alleges that Nationwide violated the West Virginia insurance code by deliberately and fraudulently delaying its charging of benefit claims against Tri–State's account in order to avoid coverage for those claims under its stop-loss policy with Tri–State. *See* Appellant's Br. at 5. Applying the West Virginia statute to regulate the determination of which claims are covered under Tri–State's stop-loss insurance policy with Nationwide certainly affects an "integral part of the policy relationship between the insurer and the insured," *Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)), since it certainly would "define the terms of the relationship between the insurer and the insured," *Pilot Life,* 481 U.S. at 51, 107 S.Ct. at 1555. It also would, by regulating when and how liability on benefit claims would be transferred from Tri–State to Nationwide, directly involve, if not actually "effect[,] a spreading of [Tri–State's] risk." *Id .* at 50, 107 S.Ct. at 1554. And, as noted above, the statute by terms is "specifically directed toward[the insurance] industry." *Id.* Tri–State's action plainly does, therefore, regulate "the business of insurance" in accordance with the McCarran–Ferguson Act. *See United States Dept. of Treasury v. Fabe,* —— U.S. ——, ——, 113 S.Ct. 2202, 2209, 124 L.Ed.2d 449 (1993) ("There can be no doubt that the actual performance of an insurance contract falls within 'the business of insurance' [for purposes of McCarran–Ferguson Act]...."); *SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568–69,

21 L.Ed.2d 668 (1969) ("The relationship between the insurance company and the insured, the type of policy which could be issued, its *reliability, interpretation and enforcement*—these were the core of the 'business of insurance' [that Congress addressed in the McCarran–Ferguson Act]." (Emphasis added)).

Finally, and most importantly, Tri–State's state action does not, as the state actions in both *Custer* and *Pilot Life* did, run afoul of "the legislative intent concerning the [exclusivity of the] civil enforcement provisions provided by ERISA § 502(a), 29 U.S.C. § 1132(a)." *Pilot Life,* 481 U.S. at 52, 107 S.Ct. at 1555. While it is plain that the remedies provided in section 502(a) to *beneficiaries* and *participants* were intended to be exclusive, and therefore preempt state actions such as those in *Pilot Life* and *Custer,* it is equally plain that that section does not expressly provide *any* remedy to employers such as Tri–State, let alone one that Congress clearly intended to be exclusive.

In sum, I believe that we misassessed the reach of the *Pilot Life* holding in *Custer* and therefore failed to engage in the full *Pilot Life* analysis. We ultimately reached the correct conclusion in *Custer,* but for reasons that we never considered. However, for the same reasons that we did not consider in *Custer,* we, as a court, are incorrect here.

Because, in my view, Tri–State's state cause of action alleging that Nationwide fraudulently processed claims to avoid coverage on those claims is, under *Pilot Life,* saved from preemption, I cannot join the majority's opinion holding otherwise.

I also disagree with the majority's alternative holding that, because the ERISA plan here was essentially self-funded, the deemer clause applies to preempt Tri–State's claims. *Ante* at 335–336. The deemer clause, by its terms, only applies to "employee benefit plan[s]" and "trust[s] established under such [ ] plan[s]," 29 U.S.C. § 1144(b)(2)(B). It does not speak at all to insurance companies such as Nationwide or claims against them. "By forbidding States to deem *employee benefit plans* 'to be an insurance company or other insurer ... or to be engaged in the business of insurance,' the deemer clause relieves *plans* from state laws 'purporting to

regulate insurance.'" *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990) (emphasis added). Nationwide obviously is not an "employee benefit plan," and the deemer clause has no application to Tri–State's claims against it. *Powell v. Chesapeake & Potomac Telephone Co. of Virginia,* 780 F.2d 419, 423 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) ("Since Connecticut General [Life Insurance Company] is not an 'employee benefit plan,' the deemer clause is inapplicable to it."); *see FMC Corp.,* 498 U.S. at 61, 111 S.Ct. at 409 ("An insurance company that insures a plan remains an insurer for purposes of state laws 'purporting to regulate insurance' after application of the deemer clause."). Thus, the district court's holding that the deemer clause preempts Tri–State's claims is, I believe, incorrect. Accordingly, I dissent from the majority's affirmance of that holding as well.