**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARGIE O. COX, Individually and as
Administratrix of the Estate of Jack
Cox; JACQUELINE DIANE COX
FLOWERS,
Plaintiffs-Appellants,

v.

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,
Defendant-Appellee,

No. 95-2915

and

NORTH CAROLINA BAPTIST HOSPITAL,
INCORPORATED; WAKE FOREST
UNIVERSITY PHYSICIANS; BLUE CROSS
AND BLUE SHIELD OF NORTH
CAROLINA, INC., a Federal Medicare
Intermediary; CONNECTICUT GENERAL
LIFE INSURANCE COMPANY,
Defendants.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., District Judge.
(CA-93-436-6)

Argued: March 5, 1997

Decided: April 22, 1997

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in which Judge Wilkins and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Timothy D. Welborn, North Wilkesboro, North Carolina, for Appellants. Matthew Miles Collette, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Franklin D. Smith, LAW OFFICES OF FRANKLIN SMITH, Elkin, North Carolina, for Appellant. Frank W. Hunger, Assistant Attorney General, Walter Clinton Holton, Jr., United States Attorney, Barbara C. Biddle, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

HAMILTON, Circuit Judge:

North Carolina's Wrongful Death Act (NC Wrongful Death Act) places a $1,500 limitation on a health care provider's right to recover a decedent's medical expenses. See N.C. Gen. Stat. § 28A-18-2(a) (1981). The central question presented in this appeal is whether this provision of North Carolina law is preempted by Medicare's secondary payer provisions. See 42 U.S.C. § 1395y(b) (1990). The district court held that Medicare's secondary payer provisions preempted the NC Wrongful Death Act's $1,500 limitation. We agree and affirm.

I.

The facts of this case are undisputed. On July 18, 1991, Jack Cox suffered severe injuries as a result of a motorcycle accident. He was hospitalized at North Carolina Baptist Hospital (NCBH) and died on November 1, 1991. At the time of his accident, Jack Cox was a Medicare beneficiary.[1] On behalf of Medicare, Blue Cross and Blue Shield

_____

[1] A "Medicare beneficiary" is an individual who is entitled to receive hospital benefits paid by Medicare because his/her supplemental security income, when combined with other available resources, falls below a certain established level. See 42 U.S.C.§ 1395d(p)(1).

2

of North Carolina and Connecticut General Life Insurance Company (the insurance companies) paid $181,187.75 in conditional benefits for Jack Cox's medical care and treatment.

Pursuant to the NC Wrongful Death Act, Jack Cox's personal representative brought an action in North Carolina state court seeking damages, including Jack Cox's medical expenses, against the individual who allegedly caused the motorcycle accident. The appellants settled their suit for $800,000 which satisfied all claims under the NC Wrongful Death Act.

Appellants, Margie O. Cox, Jack Cox's surviving spouse, and Jacqueline Diane Cox Flowers, the other intestate heir of Jack Cox, filed a declaratory judgment action against the insurance companies on July 23, 1993, in the Middle District of North Carolina. The action sought a declaration that neither the insurance companies, nor the government in its own right, could claim any portion of the $800,000 settlement above the NC Wrongful Death Act's $1,500 cap on a health care provider's right to recover damages. The Secretary of Health and Human Services, Donna Shalala (Secretary Shalala), was substituted for the insurance companies. Secretary Shalala filed a counter-claim on September 23, 1993, seeking recovery of the amount the government paid in Medicare benefits from the settlement proceeds received by the appellants.

On February 28, 1994, Secretary Shalala moved for summary judgment on her counter-claim, contending that Medicare's secondary payer provisions preempted the NC Wrongful Death Act's $1,500 cap on a health care provider's right to recover damages and that the $181,187.75 conditionally paid by Medicare on Jack Cox's behalf must be paid to Medicare from the settlement proceeds received by the appellants. Agreeing with Secretary Shalala's position, the district court granted summary judgment on Secretary Shalala's counter-claim.

Four months later, the district court determined that prejudgment interest should run on the amount owed by the appellants from February 28, 1994, the date Secretary Shalala filed her memorandum in support of the government's motion for summary judgment. In that memorandum, the government argued that the appellants would be

3

liable for interest on the money due the government if the district court decided the preemption issue in the government's favor. Following the district court's entry of judgment in favor of Secretary Shalala, the appellants noted a timely appeal.[2]

II.

The district court granted summary judgment to Secretary Shalala on her counter-claim because it concluded that Medicare preempted the NC Wrongful Death Act. Whether Medicare preempts the NC Wrongful Death Act is a question of law we review de novo. See Tri-State Machine, Inc. v. Nationwide Life Ins. Co., 33 F.3d 309, 311 (4th Cir. 1994), cert. denied, 115 S. Ct. 1175 (1995).

Under the Supremacy Clause of the Constitution, U.S. CONST. art. VI, cl. 2, a state law which conflicts with federal law is preempted. See Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991) (Supremacy Clause invalidates "state laws that`interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the [C]onstitution.'") (quoting Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 211 (1824)). Federal law preempts state law in three different situations. First, Congress can expressly preempt state law by directly stating its intention to do so. See Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). Second, absent explicit preemptive language, Congress can "occupy the field" by regulating so pervasively that there is no room left for the states to supplement federal law. See Fidelity

---

[2] Balances of $10,676 and $2,731.45 are still owed to NCBH and the Wake Forest University Physicians (WFUP), respectively. Both NCBH and WFUP were parties to this action at the district court level. However, both NCBH and WFUP were dismissed from this appeal because: (1) the preemption question argued by Secretary Shalala is determinative of NCBH's and WFUP's right to recover from the appellants under Medicare's secondary payer provisions; and (2) Margie O. Cox does not appeal the district court's ruling that she is personally responsible for the amounts owed NCBH and WFUP even if Medicare did not preempt the NC Wrongful Death Act. See North Carolina Baptist Hosp., Inc. v. Harris, 354 S.E.2d 471, 474-75 (N.C. 1987) (extended doctrine of necessaries to require wife of deceased to be personally responsible to pay for medical expenses husband incurred while alive).

Fed. Sav. & Loan Ass'n v. De la Cuesta, 458 U.S. 141, 153 (1982). Third, even when Congress has neither expressly preempted state law nor "occupied the field," a state law is per se preempted to the extent that it actually conflicts with federal law. See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n , 461 U.S. 190, 204 (1983).

This third type of preemption, commonly referred to as "conflict preemption," can arise in two situations. First, a conflict between state and federal law can arise when "compliance with both federal and state regulations is a physical impossibility." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963); see also Pacific Gas, 461 U.S. at 204. Put another way, if the federal statute dictates one result and the state statute another, the state statute is preempted to the extent that it directly conflicts with federal law. See id. Further, even though the NC Wrongful Death Act is a probate statute, and thus of particular state concern, when a state probate statute "sharply" interferes with, or is directly contrary to a federal law, the state statute must yield. See English v. General Elec. Co., 496 U.S. 72, 79 (1990). In this case, however, we are faced with a clear "conflict preemption" situation because compliance with the NC Wrongful Death Act's $1,500 limitation on a health care provider's right to recover a decedent's medical expenses and Medicare's secondary payer provisions is a "physical impossibility" and because the NC Wrongful Death Act is directly contrary to Medicare's secondary payer provisions.

Medicare pays for certain costs associated with the health care of qualified individuals, but does not pay for the costs of health care services for which, "payment has been made or can reasonably be . . . made . . . under an automobile or liability insurance policy or plan." 42 U.S.C. § 1395y(b)(2)(A)(ii). Further, when the government has information that medical care is needed because of an injury or illness that was caused by another party, a "conditional payment" can be made. See 42 U.S.C. § 1395(b)(2)(B)(i); 42 C.F.R. § 411.52 (1993). When such a conditional payment is made for medical care, the government has a direct right of recovery for the entire amount conditionally paid from any entity responsible for making primary payment. See 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.24(e). In the alternative, the government's right of recovery is subrogated to the

5

rights of an individual or entity which has received a payment from the responsible party. See 42 U.S.C. § 1395y(b)(2)(B)(iii).

In this case, Medicare is entitled to reimbursement for Jack Cox's medical expenses out of the $800,000 settlement. First, Medicare conditionally paid Jack Cox's medical expenses pursuant to 42 U.S.C. § 1395(b)(2)(B)(i). Second, the $800,000 settlement was paid by a responsible party--the insurance company of the individual who was responsible for Jack Cox's motorcycle accident--pursuant to a worker's compensation law or plan, an automobile or liability insurance policy or plan (including a self insured plan), or a no-fault insurance law. See 42 U.S.C. § 1395y(b)(2)(A)(ii). Third, the NC Wrongful Death Act settlement received by the appellants included the recovery for Jack Cox's medical expenses which Medicare had conditionally paid. See N.C. Gen. Stat. § 28A-18-2(b)(1).

The NC Wrongful Death Act, N.C. Gen. Stat. § 28A-18-2, however, precludes the reimbursement of Jack Cox's medical expenses provided for under Medicare's secondary payer provisions. The NC Wrongful Death Act provides in pertinent part:

> (a) When the death of a person is caused by a wrongful act . . . [the tortfeasor] shall be liable . . . for damages. . . . The amount recovered in such action is not liable to be applied as assets . . . of the deceased [except for] reasonable hospital and medical expenses not exceeding one thousand five hundred dollars ($1500) incident to the injury resulting in death . . . [instead, those funds] shall be disposed of as provided in the Intestate Succession Act.

> (b) Damages recoverable for death by wrongful act include:

> (1) Expenses for care, treatment and hospitalization incident to the injury resulting in death . . ..[3]

_____

[3] We have recently held that it is obvious from the damages recoverable under the NC Wrongful Death Act, that the Act is both a survivorship action and a traditional "wrongful death" action. See McInnis v. Provi-

6

Under this provision, the appellants, as Jack Cox's intestate heirs, are allowed to recover for Jack Cox's medical expenses, and Medicare's subrogated right to recover those medical expenses is limited to $1,500 of the $181,187.75 which Medicare conditionally paid on Jack Cox's behalf. See Forsyth County v. Barneycastle , 197 S.E.2d 576, 579 (N.C. Ct. App.) ($1,500 limit on creditor's right to recover strictly construed), cert. denied, 198 S.E.2d 722 (N.C. 1973). Thus, compliance with Medicare's secondary payer provisions, which mandates full payment for Jack Cox's medical expenses from the $800,000 settlement, is impossible because of the NC Wrongful Death Act's $1,500 limitation on the recovery of medical expenses.

As stated above, federal law preempts the NC Wrongful Death Act to the extent that the NC Wrongful Death Act is in direct conflict with Medicare's secondary payer provisions, 42 U.S.C.§ 1395y(b). In this case, the NC Wrongful Death Act's $1,500 limit on Medicare's right to receive payment for services from a NC Wrongful Death Act settlement is in direct conflict with Medicare's secondary payer provisions which mandates full reimbursement. Consequently, to the extent the NC Wrongful Death Act limits Medicare's right of recovery under the circumstances of this case to $1,500, the NC Wrongful Death Act is preempted. Accordingly, the district court correctly granted summary judgment to Secretary Shalala on her counter-claim.

III.

Next, the appellants claim that the district court abused its discretion when it calculated prejudgment interest beginning on February

---

dent Life & Accident Ins. Co., 21 F.3d 586, 589-90 (4th Cir. 1994); see also Barneycastle, 197 S.E.2d at 578 ("Under . . . [§ 28A-18-2] . . . all . . . damage[s] which might conceivably have been set out in a claim for personal injuries prior to death are now includable in an action for damages for death by wrongful act."). Traditionally, claims such as medical expenses, have been considered "survivorship" actions and thus, are the property of the estate, because they are claims the decedent possessed when he died. See McInnis, 21 F.3d at 589-90. However, by statute, North Carolina has incorporated that sort of traditional "survivorship" action into its action for wrongful death--an action for the benefit of the decedent's intestate heirs, not the decedent's estate. See N.C. Gen. Stat. § 29A-18-2; Hoke v. Atlantic Greyhound Corp., 38 S.E.2d 105, 109-110 (N.C. 1946).

7

28, 1994. The decision to award prejudgment interest is a matter within the district court's discretion. See United States v. Gregory, 818 F.2d 1114, 1118 (4th Cir.), cert. denied, 484 U.S. 847 (1987). The district court chose February 28, 1994, because that date coincided with the filing of Secretary Shalala's memorandum in support of her motion for summary judgment on her counter-claim. That memorandum unequivocally notified the appellants that a debt was due and that interest could run on the debt from the date the notice was received. See 45 C.F.R. § 30.12. The Code of Federal Regulations sets forth the general principles governing the assessment of interest against a debt owed to the government. The"notices to debtor" regulation requires that the government inform the debtor of: (1) the amount and nature of debt; (2) the date payment is due; and (3) the assessment of interest from the date notice was mailed. See id. Because Secretary Shalala's February 28, 1994 memorandum in support of her motion for summary judgment on her counter-claim directly stated that interest would begin accruing sixty days from the date the appellants received the settlement proceeds, the district court did not abuse its discretion when it concluded that interest on the debt owed to Medicare began running on February 28, 1994.

IV.

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

8