**GREAT COASTAL EXPRESS, INC., Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF VIRGINIA, et al., Defendants.**

**Civ. A. No. 3:91CV00623.**

United States District Court, E.D. Virginia, Richmond Division.

Feb. 5, 1992.

Allan M. Heyward, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., for plaintiff.

Jeanette D. Rogers, Legal Dept., Blue Cross & Blue Shield of Virginia, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the plaintiff's motion to remand, pursuant to 28 U.S.C. 1447(c). For the reasons discussed below, the plaintiff's motion to remand will be DENIED.

## FACTUAL BACKGROUND

On May 1, 1988, the plaintiff, Great Coastal Express ("Great Coastal"), entered into a "Group Contract" with the defendant, Blue Cross and Blue Shield of Virginia ("BCBS"), to provide "for the provision of certain benefits to employees of Great Coastal Express." Motion for Judgment, para. 3. Great Coastal contemporaneously entered into an "Administrative Services Agreement" with the other defendant, Total Program Administrators ("TPA"), a subsidiary of BCBS, whereby TPA would perform certain administrative functions, including "processing claims for payment by Blue Cross, screening claims for eligibility in certain areas, following up with Blue Cross in obtaining the actual claims payments and otherwise acting on behalf of Great Coastal Express in dealing with Blue Cross under the Group Contract." Motion for Judgment, para. 4. Each contract provided for its own expiration at the end of one year. The contracts were renewed for a second year on May 1, 1989. At the end of the second contract year, April 30, 1990, Great Coastal chose not to renew the contracts for a third year, but to let them expire.

Pursuant to the contracts and the general working arrangement between the parties, claims were to be sent to Great Coastal, which, after verifying employment eligibility, forwarded the claims to TPA for review. Claims approved by TPA were forwarded to BCBS for payment from monies maintained in an account funded by Great Coastal. Motion for Judgment, para. 8. "Great Coastal generally forwarded claims to TPA for handling once a week. As a matter of practice checks issued in payment on claims approved for payment by TPA were run once a week and forwarded to the claimant." Motion for Judgment, para. 10.

Toward the end of the second year, Great Coastal discovered that there were a number of outstanding claims which had never been forwarded to it by TPA. Motion for Judgment, para. 18. Great Coastal processed the last of these claims and returned them to TPA by April 23, 1990. Motion for Judgment, para. 19. Because of the delay, however, TPA was unable to process and forward these claims to BCBS for the issuance of checks prior to the expiration of the contract year. The checks were eventually issued on May 4, 1990. Motion for Judgment, para. 20. Great Coastal also claims that TPA, throughout the second year, "approved

payments on claims which should not have been approved for a variety of reasons and approved overpayments and double-payments on claims." Motion for Judgment, para. 23.

The Group Contract also provided for a prescription drug benefits program. Under this program, participating pharmacies submitted claims directly to BCBS. "Unlike the procedure for handling medical care benefits, Great Coastal is not involved in the handling and processing [of] the claims. Claims are paid out of a bank account maintained by Blue Cross/TPA utilizing funds drafted by TPA from Great Coastal's regular operating accounts under an authorization Great Coastal cannot revoke." Motion for Judgment, para. 21. Despite Great Coastal's objections, TPA and BCBS have continued to pay claims under the prescription drug program. Motion for Judgment, para. 22.

Great Coastal also makes claims concerning BCBS's obligations under the aggregate stop loss insurance provision of the contract.

Mechanically, the aggregate stop loss program functioned by means of an account which Great Coastal was required to maintain and fund to the extent of all claims payments made by Blue Cross during the contract year. Great Coastal could not and cannot close this account without Blue Cross's consent.

Reimbursement of Great Coastal for payments in excess of the aggregate stop loss limits was, under the Group Contract, to be accomplished through an accounting at the end of the contract year whereby all claims payments would be totalled and the excess over the aggregate stop loss, after applying any credits due Blue Cross was to be refunded to Great Coastal Express.

Motion for Judgment, paras. 12–13. Great Coastal complains that the total amount of the accounting fails to include the May 4, 1990, claims payments, the prescription drug payments made after May 1, 1990, and credits due for overpayments, double payments, and other improper payments. Motion for Judgment, para. 25. Great

Coastal makes a claim against BCBS for all these items under the accounting provided for by the stop loss insurance. Motion for Judgment, paras. 27–41.

The claims against TPA, while arising out of the same incidents, vary slightly. Great Coastal claims that TPA, as a subsidiary of BCBS, owed it a heightened duty of loyalty and care. Great Coastal claims that TPA did not protect its interests, vis-a-vis BCBS, and that it was negligent in the processing of claims. Great Coastal seeks to recover against TPA for alleged breaches of fiduciary duty and breaches of the contract. Motion for Judgment, paras. 42–67.

DISCUSSION

■ The defendants' removal was based on federal question jurisdiction, which they asserted was created by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The plaintiff brought the instant motion to remand arguing that there is no federal question presented on the "well pleaded complaint," *see Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and that the doctrine of "complete preemption" is not applicable to this case, *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). It is the plaintiff's contention that "[i]n both form and substance, plaintiff's claim against the defendants is governed by Virginia contract law and the common law duty of loyalty owed by an agent to its principal." Plaintiff's Memorandum in Support of Its Motion to Remand, at 6.

The defendants do not seem to contend that there is federal question jurisdiction on the face of the well pleaded complaint. A quick review of the complaint shows that it does not, on its face, plead a federal question. The issue then becomes whether or not the plaintiff's claims are completely preempted by ERISA, and thus removable as an exception to the "well pleaded complaint" doctrine. This, in turn, requires an analysis of section 502(a) of the Act, 29 U.S.C. § 1132(a), to determine whether the facts pleaded by Great Coastal state a

cause of action under the civil remedy provisions of ERISA. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

The general purpose of ERISA is to protect the interests of participants in and beneficiaries of employee benefit plans. This goal is achieved, in large part, through the creation of an exclusive means of civil enforcement. *See* 29 U.S.C. § 1132(a).[1] Each provision of the section creates a discrete cause of action and identifies which classes of plaintiffs may have standing to bring that cause of action. Of the classes provided for, Great Coastal may belong to only one, that of a fiduciary.

Since the plaintiff seeks contract damages, the relevant cause of action would be provided for by section 502(a)(2): "A civil suit may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409." 29 U.S.C. § 1132(a)(2). Section 409, in turn, establishes liability for a breach of a fiduciary duty. 29 U.S.C. § 1109. The fiduciary duties are described in Section 404, which provides, *inter alia:*

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ... [and] in accordance with the documents and instruments governing the plan....

29 U.S.C. § 1104(a)(1).

The preliminary question is whether or not the plaintiff and at least one of the defendants are fiduciaries within the meaning of ERISA. In defining a fiduciary, the Act states:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretion or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

■ There can be little doubt that BCBS is a plan fiduciary with regards to some of its contractual functions.[2] The contract between BCBS and Great Coastal is drafted by BCBS, and it is this contract that sets out the parameters by which a claim is to be judged or processed. Further, BCBS retained the ability to "cancel or amend th[e] Contract by giving written notice to [Great Coastal] at least thirty (30) days in advance." Group Contract, § VII.D.1., at 35. Thus, BCBS retained the discretionary authority to unilaterally alter the rules by which claim determinations and payments

1. Not only are the civil enforcement provisions of ERISA the exclusive means for raising the relevant causes of action, but with the exception of a suit under section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), the federal courts have *exclusive* jurisdiction over these causes of action. 29 U.S.C. § 1132(e)(1).

2. The Court expressly declines to make any determination with regard to whether or not TPA is a fiduciary under ERISA. The determination with regard to BCBS is dispositive of the issue before the Court. Even if the Court were to determine that TPA was not a fiduciary, the Court would, in its discretion, exercise supplementary jurisdiction over TPA. The claims in this case are simply too interrelated to efficiently be tried separately.

While the Court recognizes that it will almost certainly have to decide TPA's status at some point, it would prefer to do so after the parties have had an opportunity to more fully and directly brief the issue. Additionally, the Court is hopeful that the factual issues in the case will be more fully developed by that time. Along these lines, it is worth noting "that fiduciary status is to be determined by looking at the *actual* authority or power demonstrated, as well as the formal title and duties of the party at issue." *Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, 418 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Additionally, this appears to be an area of law over which there is some disagreement. *Compare, e.g., Munoz v. Prudential Ins. Co. of America,* 633 F.Supp. 564, 567–69 (D.Colo.1986); 29 C.F.R. § 2509.75–8, D–2 (1991) *with American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the United States,* 841 F.2d 658, 662–63 (5th Cir. 1988).

were to be made. The contract also provides that "[t]he final determination of the extent of the benefits to which any Member is entitled under the Contract shall rest with [BCBS]." Group Contract, Annex A, § C. These powers clearly evince fiduciary status within the meaning of ERISA. *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985) (pointing out the importance of "discretionary control over the disposition of claims" in determining fiduciary status); *Munoz v. Prudential Ins. Co. of America*, 633 F.Supp. 564, 567–69 (D.Colo.1986) (emphasizing the importance of the ability to review and make a final determination on claims in determining fiduciary status).

■ To state a cause of action under section 502(a)(2), 29 U.S.C. § 1132(a)(2), it is not sufficient for BCBS to generally be a fiduciary, it must have had fiduciary responsibilities with regard to the specific issues in the suit. *See Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 417–18 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). It is the Court's determination that BCBS was a fiduciary with regard to the present claims.[3]

A close analysis of Great Coastal's claims reveal that they do, at heart, relate to BCBS's fiduciary duties. Among the various claims against BCBS is the plaintiff's claim that BCBS continued to pay out prescription drug benefits against Great Coastal's protest and after the expiration of the contract. However, as the motion for judgment demonstrates, BCBS's decisions with regard to the payment of these funds was part of its fiduciary duties under the contract. The determination and processing of claims for prescription drug benefits were, under the contract, exclusively within the discretion of BCBS. Group Contract, § V., at 30.

Similarly, Great Coastal has claimed that it is due credits for overpayments, double payments, and other generally wrongful payments of claims. The contract provides that "[t]he final determination of the extent of the benefits to which any Member is entitled under the Contract shall rest with [BCBS]." Group Contract, Annex A, § D. Since the ultimate determination of benefits is a fiduciary duty of BCBS's, any claim that benefits were paid which should not have been paid necessarily impinges upon its fiduciary duties.[4]

Finally, the monies allegedly owed under the stop loss insurance also appear to relate to the fiduciary duties of BCBS. While it is somewhat ambiguous, it appears

---

**3.** The Court is convinced, based on the record before it, that BCBS is a fiduciary with regard to these issues. The Court is mindful, however, that the full record has not yet been developed and that it is a party's actual authority, not just the formal duties as set out in the Plan documents, that determine whether or not the party is a fiduciary. If the facts as they develop prove that neither BCBS nor TPA are fiduciaries, then this case will be remanded to the state court for failure of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**4.** Great Coastal argues that causes of action under section 502(a), 29 U.S.C. § 1132(a), ultimately accrue to the interest of plan participants and beneficiaries. Further, it is not alleging that claims should have been paid but were not. Rather, it claims that various beneficiaries were overpaid. As such, it argues, a suit is inappropriate because no participant or beneficiary was injured; to the contrary, certain beneficiaries received a windfall.

The specious nature of the plaintiff's argument is indirectly revealed in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140–42, 105 S.Ct. 3085, 3089–90, 87 L.Ed.2d 96 (1985). There, the Supreme Court held that a recovery under section 409 inured to the benefit of the plan as a whole rather than to an individual beneficiary. *Id.* at 140, 105 S.Ct. at 3089. In support of its decision, the court stated: "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. at 3090; *see also id.* at 142 n. 9, 105 S.Ct. at 3090 n. 9 ("[T]he common interest shared by all four classes [under 29 U.S.C. § 1132(a)(2) ] is in the financial integrity of the plan."). Clearly the participants and beneficiaries as a whole have an interest in seeing that the financial integrity of the plan is not harmed by overpayments, double payments, and generally mistaken payments.

that the funds allegedly owed are properly characterized as funds belonging to the Plan. The Plan Summary provides that the Plan is to be funded, at least in part, by employee contributions. *See* Plan Summary, at 17. It further appears that these funds are at some point segregated from Great Coastal's general assets. Finally, Great Coastal is unable under the terms of the contract to fully alienate the funds in the separately maintained account without the consent of BCBS. *See* Motion for Judgment, paras. 12, 21. Each of these facts suggests that the funds in the segregated account are Plan funds, and thus, that an accounting for overpayments would be to the benefit of the Plan. As such, the payment or retention of these funds touches on an essential fiduciary duty under the Plan. *Cf.* 29 C.F.R. § 2580.412–5 (1991) ("[I]f plan benefits are provided through the medium of an insurance carrier or service or other organization and no segregation from general assets of monies used to purchase such benefits is made prior to turning such monies over to the organization contracting to provide benefits, plan funds or other property come into being at the time of receipt of payment for such benefits by the insurance carrier or service or other organization.").

With regard to Great Coastal's status as a fiduciary, the defendant argues that Great Coastal is clearly a fiduciary by virtue of its position and the terms of the Plan. The plaintiff does not dispute its position as a fiduciary, and there can be little doubt that it in fact serves as a fiduciary. *See, e.g.,* Plan Summary, at 17 (naming Great Coastal as Plan Administrator). It argues instead that the defendants are estopped from asserting Great Coastal's fiduciary role. Specifically, Great Coastal argues that the defendants have previously taken the position that the "[p]laintiff lacks standing to bring an action under [ERISA] in that it is not a participant, beneficiary or fiduciary as defined in ERISA." *See* De-

fendants' Grounds of Defense, Affirmative Defenses, para. 3. As such, Great Coastal argues, the defendants cannot now assert a position that is directly inconsistent with their prior position in this case; it is a well-established principle "that parties cannot approbate and reprobate in the same breath." Plaintiff's Reply Memorandum, at 7.[5]

■ The doctrine the plaintiff seeks to assert is a judicially created doctrine of estoppel. As such, its application to the present issue would be inappropriate. The issue to be decided bears directly on jurisdiction. If the plaintiff is a fiduciary, the federal courts will have *exclusive* jurisdiction over the plaintiff's claims. If, on the other hand, Great Coastal is not a fiduciary, then this Court will be without jurisdiction. Because jurisdiction is a matter of legislative creation, it cannot be circumvented through a judicially created doctrine. *Cf. Sejman v. Warner–Lambert Co.,* 845 F.2d 66, 69–70 (4th Cir.1988) (In holding that, because ERISA's preemption provisions have a quasi-jurisdictional effect, it would be error to foreclose a party from raising preemption in a present case based on their failure to raise it in a prior case, the court stated: "A judicially created procedural doctrine cannot defeat the intent of Congress."). This same reasoning applies to the instant case, but with even greater force. In the instant case, the issue is fully jurisdictional. Because the plaintiff's case states a cause of action under section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), a state court would have no jurisdiction over the case. 29 U.S.C. § 1132(e)(1).

## CONCLUSION

The instant case was properly removed to the federal courts. The facts as pleaded by the plaintiff establish a cause of action under section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2). In sum, Great Coastal, a fidu-

---

5. The defendants' argument that they were pleading in the alternative as permitted by Rule 8(e) of the Federal Rules of Civil Procedure is unavailing. As the plaintiff correctly points out, this is not an issue of alternative defenses. The defendants did not plead these alternatives in their answer. Rather, the claim that the plaintiff is a fiduciary was not raised until the response to the motion to remand.

ciary, is suing BCBS, also a fiduciary, for failing to administer the prescription drug benefits program, to process claims, and to apply the stop loss insurance in accordance with the terms of the Plan documents, a violation of its fiduciary duties under section 404(a)(1)(D), 29 U.S.C. 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties ... in accordance with the documents and instruments governing the plan...."). Thus, the suit is properly removable under the doctrine of complete preemption. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).