BROADNAX MILLS, INC., Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD
OF VIRGINIA, Defendant.

Civ. No. 3:94CV603.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 8, 1994.

Michael Randolph Shebelskie and George H. Gromel, Jr., Hunton & Williams, and Virginia H. Hackney, Richmond, VA, for Brodnax Mills, Inc.

Roscoe Connell Roberts, Blue Cross/Blue Shield, Richmond, VA, and Richard C. Titus, Raleigh, NC, for Blue Cross and Blue Shield of Virginia.

## *MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on the plaintiff's motion to remand, pursuant to 28 U.S.C. § 1447(c). For the reasons set forth below, the Court will deny the motion.

### I.

In 1978, the plaintiff established a fully insured health benefit plan for its employees. Because the plaintiff was unfamiliar with administering such a plan, it sought advice regarding plan administration and "the availability of, and the need for, insurance to provide . . . reasonable protection from liability under the [plan]." Motion for Judgment ¶ 4. Since adopting the plan, the plaintiff has relied on the defendant for such advice.

The plan was, until August 1, 1989, fully insured by the defendant. On that date, the plan was converted to a self-insured plan. The plaintiff and the defendant concomitantly entered into an administration services only agreement ("ASO Agreement"). Pursuant to this agreement, the plaintiff agreed to pay premiums into an operating account managed by the defendant in exchange for the provision of various claims services. The monthly payments made by the plaintiff consisted of funds contributed by both the plaintiff and the plaintiff's employees. Receipts and charges were recorded by the defendant in the operating account. If, at the termination of the contract, the sum of claims paid plus administrative and other fees exceeded the amount of premiums paid, the plaintiff

owed such an amount to the defendant, plus interest.

The ASO Agreement was renewed in subsequent years. In connection with the 1991–92 ASO Agreement, the plaintiff procured from the defendant an excess risk insurance policy with specific stop loss insurance. This policy limited the plaintiff's liability for claims paid in excess of $60,000.00 per year per participant as the plaintiff was reimbursed for claims exceeding such amount. The policy did not, however, provide any limit on the plaintiff's *overall* liability for operating account deficits. Motion for Judgment ¶ 22. The plaintiff contends that the defendant "did not inform Broadnax ... about the existence of, or the need for, any additional insurance to protect Broadnax against liability for a large deficit in the operating account." *Id.* at ¶ 23.

The ASO Agreement was renewed for the 1992–93 contract year after the defendant's review of the plaintiff's historical and projected claims levels.[1] Once again, the agreement did not provide for *aggregate* stop loss insurance for 1992–93. During that year, an unusually large number of claims were submitted by plan participants. As a result, the operating account showed a deficit of $240,000.00 at the end of the contract year. According to the plaintiff, the account would have shown a surplus of approximately $52,347 if the defendants had recommended and provided aggregate stop loss insurance.

The plaintiff also alleges that the defendants failed to explain a provider payment differential provision that was contained in the ASO Agreement. Specifically, the plaintiff claims that the defendant obtained discounts from various health care providers and that the 1992–93 deficit, as reported in the operating account, fails to account for these discounts which allegedly amounted to $48,952.27. The plaintiff states that this amount represents "undisclosed fees ... that were improperly and unfairly imposed" owing to the defendant's failure to explain the meaning of the ASO Agreement's provider payment differential provision. Motion for Judgment ¶¶ 44–45.

Finally, the plaintiff charges that the defendant failed to explain that, under the ASO Agreement, the plaintiff was liable "for all claims incurred but not reported prior to the termination of the ASO Agreement," and that terminal liability limit insurance was available to protect the plaintiff against potential "excessive terminal liability." Motion for Judgment ¶¶ 49–50. Because it was unaware that such insurance was available, the plaintiff alleges that it is now liable for an undetermined amount of claims submitted after the ASO Agreement expired on July 31, 1994.

On these allegations, the plaintiff filed a six count motion for judgment in the Circuit Court of Mecklenberg County on August 1, 1994. The motion for judgment contains state law causes of action including breach of contract, negligence, breach of fiduciary duty, promissory estoppel, negligent misrepresentation and constructive fraud. The motion for judgment nowhere mentions the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Nevertheless, the defendants filed a notice of removal on August 18, 1994, basing removal on federal question jurisdiction assertedly created by ERISA. The plaintiffs moved to remand the matter to state court on September 19, 1994.

## II.

█ In order for removal jurisdiction to exist, a federal court must have "original jurisdiction." 28 U.S.C. § 1441(a). Original jurisdiction exists where the plaintiff's cause of action arises under the Constitution or federal law. *See* 28 U.S.C. § 1331. Whether or not an action "arises under" federal law is generally determined by the "well pleaded complaint" rule. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vac. Trust for S. Cal.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). As articulated by the Supreme Court,

---

1. This review is allegedly designed to ascertain projected insurance needs and recommend the insurance necessary to protect against "commercially unreasonable risks" arising under the plan. Motion for Judgment ¶ 26.

whether a case is one arising under the Constitution or a law or treaty of the United States ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2846 (*quoting Taylor v. Anderson*, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). In the instant case, the complaint nowhere mentions ERISA or any other federal law. Rather, it asserts state law causes of action based on the defendant's advice, or lack thereof, regarding insurance and certain discounts related to the plaintiff's health benefits plan.

■■■ The plaintiff asserts that the absence of a federal law on the face of the complaint is alone sufficient to remand the action to state court. The Court does not agree as it is well settled that removal jurisdiction may nevertheless be established under the "complete preemption" doctrine. Pursuant to this doctrine, a federal court will have jurisdiction, regardless of the complaint's contents, where Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). In such cases, the complaint is "deemed to arise under federal law" and remand is "impermissible." *Richmond v. American Systems Corp.*, 792

F.Supp. 449, 453, 455 (E.D.Va.1992). Because a general preemption defense is insufficient to establish removal jurisdiction, *Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546, complete preemption requires more than an assertion of "federal occupation of the pertinent area of the law." *Richmond*, 792 F.Supp. at 456 (*citing Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546). Where ERISA is cited as the jurisdictional basis, complete preemption exists where the plaintiff's claim is displaced by ERISA's preemption provision, 29 U.S.C. § 1144, and falls within ERISA's civil enforcement provision. 29 U.S.C. § 1132. *Taylor*, 481 U.S. at 64–67, 107 S.Ct. at 1546–48 (complete preemption exists because cause of action was preempted by ERISA and fell squarely within § 1132).[2]

### III.

■■■ The "touchstone of the federal district court's removal jurisdiction is ... the intent of Congress." *Taylor*, 481 U.S. at 66, 107 S.Ct. at 1547. ERISA is the body of federal law regulating employer provided benefit plans.[3] The law is designed to achieve uniformity in the regulation of pension plans and to "promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 88, 103 S.Ct. 2890, 2895, 77 L.Ed.2d 490 (1983).

The ERISA statutory scheme relies heavily on the civil enforcement and preemption provisions to attain Congress' underlying objectives. ERISA's preemption provision reads, in pertinent part: "[T]he provisions of this subchapter ... shall supersede any and

---

**2.** In certain situations, a court examining a remand motion may conclude that a claim is preempted based on § 1144 alone. For example, in *Richmond*, it was not possible for the plaintiffs' claims to fall within the ERISA civil enforcement provisions because the plaintiffs, minority shareholders of the defendant corporation, did not have standing under those provisions. Thus, in considering whether to exercise its discretionary remand powers, the court concluded that preemption would have to come from ERISA's preemption provision, if anywhere. In this vein, the court concluded that the claims did not sufficiently "relate to" ERISA to be preempted under § 1144. 792 F.Supp. at 456. In contrast, the *Taylor* plaintiff, a plan *beneficiary* suing to recover benefits, had standing and his com-

plaint clearly fell within ERISA's civil enforcement provisions. The *Taylor* Court concluded that the claim was completely preempted and removal was proper because ERISA preempted the claim and because it was Congress' clear intent "to make suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction." 481 U.S. at 66, 107 S.Ct. at 1547. As set forth in this memorandum, the Court determines that the instant matter falls within the *Taylor* complete preemption analysis.

**3.** It is uncontested that the plaintiff's plan is covered by ERISA. *See* 29 U.S.C. § 1002(1).

all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This section was intended to ensure that plans and sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between states and the Federal Government. Otherwise, the inefficiencies could work to the detriment of plan beneficiaries.

*Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted).

■ The civil remedies provision creates several discrete causes of action and identifies the parties who have standing to bring an action under that section.[4] This section reflects a "careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). These provisions provide the "exclusive remedy for rights guaranteed under ERISA." *Ingersoll–Rand,* 498 U.S. at 144, 111 S.Ct. at 485.

## IV.

■ Under the preemption provision, the critical inquiry is whether or not the state cause of action "relates to" the plaintiff's health benefits plan. In order to achieve the policies underlying ERISA, the preemption clause is generally read expansively and a state cause of action will be

4. 29 U.S.C. § 1132 provides, in pertinent part:
   A civil action may be brought—
      (1) by a participant or beneficiary—
      (A) for the relief provided for in subsection (c) of this section [concerning requests to the administrator], or
      (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
      (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];
      (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates

found to "relate to" an ERISA plan "if it has a connection with or reference to such a plan." *Dist. of Columbia v. Greater Washington Bd. of Trade,* —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *accord Tri-State Machine, Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309, 312 (4th Cir.1994).

The provision, however, is not free of limitations. "Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. As set forth in *Richmond,* 792 F.Supp. at 457, several principles have evolved from the cases addressing this limitation on preemption.

First, state laws involving the exercise of traditional state authority are less likely to be preempted than state laws regulating areas not traditionally left to the state. Second, a state law is more likely to relate to a benefit plan, and thus be preempted, if it affects relations among principal ERISA entities (the employer, the plan, the plan fiduciaries, and the beneficiaries). When it affects relations among principal ERISA entities and an outside party, or between two outside parties, a state law is less likely to be preempted. Third, preemption is less likely to occur where the effect of a state law of general application on an ERISA-covered plan is merely incidental.[5]

*Id.* at 457–58 (citations omitted).

The plaintiff asserts that the suit does not "relate to" ERISA. In support of this contention, the plaintiff states that the subject matter of the suit, stop-loss insurance, is not

any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a).

5. These principles served as the basis for the recent holding that certain provisions of Virginia worker's compensation law do not "relate to" ERISA plan. *See Employers Resource Management Co., Inc. v. James,* 853 F.Supp. 920, 929 (E.D.Va.1994) (state laws did not impact primary administrative functions of the plan, such as disclosure, funding, reporting, vesting and enforcement).

a plan asset, and that they are suing the defendant only in its capacity as an insurance broker for improper advice concerning such insurance.

■■■■ This argument fails to account for several critical facts. To begin, the defendant was not merely a third party insurer.[6] To the contrary, the ASO agreement makes clear that the defendant was the administrator and servicer, as well as the insurer, of the plaintiff's plan. *See* Answer, Exhibit 1, ASO Agreement ("The Company agrees to administer the benefits afforded Participants as set forth herein. . . ."). In this capacity, the defendant, among other responsibilities, determined the extent to which participants and beneficiaries were covered and, in this regard, applied plan assets to pay for services rendered by health care providers. This involvement in plan operations elevates the defendant's status above that of mere insurer. Indeed, as set forth below, the defendant, like the plaintiff, was a plan fiduciary. Where a dispute involves "principal ERISA entities," it is more likely to "relate to" the plan and be preempted. *Richmond,* 792 F.Supp. at 457.

Moreover, the plaintiff's claims implicate the primary administrative functions of the plan. *See Martori Bros. Dists. v. James–Massengale,* 781 F.2d 1349 (9th Cir.) *cert. denied* 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986) ("state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting and enforcement"); *Employers Resource Management Co., Inc. v. James,* 853 F.Supp.

920, 929 (E.D.Va.1994) (same); *see also Tri–State Machine, Inc.,* 33 F.3d at 309 (sundry claims "essentially concerning" claims processing and mismanagement related to the plan). While a stop-loss policy insuring the sponsor of a plan is not ordinarily considered a plan asset, *see Thompson v. Talquin Bldg. Prod. Co.,* 928 F.2d 649, 653 (4th Cir.1991) (purpose of stop-loss policy was "to protect Talquin from catastrophic losses," not pay benefits to participants), the allegedly inadequate insurance policy at issue was purchased, in part, with funds contributed by plan *participants.* Defendant's Memorandum in Opposition to Remand Motion at 11. Accordingly, any challenge to the defendant's advice regarding the procurement of stop-loss insurance translates into a challenge to the defendant's management, administration and disposal of plan assets for the simple reason that the employee's contributions became assets of the plan upon receipt of such funds by the defendant. *See* 29 C.F.R. 2580.412–5.[7] Likewise, the assertion that the defendant failed to credit the plaintiff's account with provider discounts directly involves the defendant's duty to report and disclose accurately and truthfully the financial status of the health benefits plan. This conclusion is reflected in the plaintiff's allegations that the defendant was to "deduct from the operating account only those claims expenses that [the defendant] had actually paid on behalf of [plan] participants," that the defendant failed to abide by this duty and that the defendant "has therefore not actually paid claims in the amounts represented in

6. The plaintiff proposes that any claims involving self-funded plans and stop loss insurance do not "relate to" ERISA as such claims involve only concurrent third party contracts. To support this proposition, they rely on *Consumer Benefit Ass'n of the United States v. Lexington Ins. Co.,* 731 F.Supp. 1510 (M.D.Ala.1990). In *Consumer Benefit,* the court held that a state law claim under a reinsurance policy was not preempted because reinsurance contracts are collateral, third party business relationships pursuant to which ERISA plan participants have no legal rights under Alabama law. The facts of *Consumer Benefit* differ in some significant respects from the facts giving rise to the instant matter. Importantly, the insurer in *Consumer Benefit* was an independent third party, unlike the defendant in the case before the Court who is also intimately involved with the administration of the plaintiff's

plan. Moreover, the *Consumer Benefit* plaintiff, unlike the plaintiff in the case at bar, made no allegations concerning provider discounts, claims that involve plan reporting and disclosure requirements. For these reasons, the Court declines to follow the court's conclusion in *Consumer Benefit.*

7. The fact that employee contributions, in part, funded the plaintiff's policy also distinguishes the instant matter from the narrow factual scenario addressed in the Department of Labor Advisory Opinion cited by the plaintiff as support for the proposition that stop-loss policies covering the employer are not plan assets. *See* DOL Advisory Opinion 92–02A (January 17, 1992) (employer represented that employee contributions were not required by the medical benefit plan).

its [account] statements." Motion for Judgment ¶¶ 43–44. In other words, the plaintiff challenges the application of plan assets and alleges that the defendant has misrepresented its plan disclosures. Thus, the plaintiff's claims challenge the defendant's handling of essential plan functions and "relate to the plan in the common sense meaning of that phrase." *Tri–State Machine, Inc.,* 33 F.3d at 312.

Finally, the facts set forth above make it clear that any resolution of the plaintiff's claims cannot occur without reference to the plan and its governing documents, including the ASO Agreement.[8] "The existence of [the plaintiff's] plan is a critical factor in establishing liability. . . ." *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483. The plaintiff can recover only after proving, *inter alia,* that its insurance was inadequate to cover liabilities flowing directly from the plan. The calculation of such liabilities can only be accomplished by referencing the plan accounting statements and other plan documents. As regards the plaintiff's other allegations, recovery is possible only upon a showing that the defendant, in administering the plan, failed to be forthright about reporting and disclosing provider discounts or disclosing the availability of terminal liability limit insurance. Again, such a showing is possible only by reviewing plan documents and financial statements. "Because the court's inquiry must be directed to the plan, this judicially created cause of action 're-late[s] to' an ERISA plan." *Id.*

On this record, the Court concludes that the plaintiff's causes of action "relate to" the health benefit plan. This does not end the inquiry, however. To determine whether or not the plaintiff's claim is completely preempted under the facts presented, the Court must turn its attention to the preemptive effect of ERISA's civil remedies provi-

sions. *Taylor,* 481 U.S. at 63, 107 S.Ct. at 1546.

## V.

The ERISA civil enforcement provision provides several causes action. *See* 29 U.S.C. 1132, *supra* n. 4. The relevant cause of action in the instant matter reads as follows: "A civil suit may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [breach of fiduciary duty]." 29 U.S.C. § 1132(a)(2). In order to fall within § 1132(a)(2), both the plaintiff and the defendant in the instant matter must be fiduciaries. *See Great Coastal Express, Inc. v. Blue Cross and Blue Shield of Virginia,* 782 F.Supp. 302 (E.D.Va.1992) (denying motion to remand because both parties' fiduciaries and claims preempted under § 1132).[9]

Pursuant to ERISA,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Moreover, "to state a cause of action under section 502(a)(2), 29 U.S.C. § 1132(a)(2), it is not sufficient for [the defendant] to generally be a fiduciary, it must have had fiduciary responsibilities with regard to the specific issues in the suit." *Great Coastal,* 782 F.Supp. at 306 (*citing Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, *cert. denied* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990)).

In the instant matter, both the plaintiff and the defendant fall within ERISA's definition of "fiduciary." This conclusion is inescapable upon a reading of the ASO

---

8. There is no doubt that the ASO agreement is one of the fundamental documents governing the operational aspects of the plaintiff's health benefits plan. Indeed, the extent to which the plaintiff's employees could receive benefits was determined solely by the defendant under the terms and conditions of the ASO Agreement. *See* Answer, Exh. 1, ASO Agreement X.B at 39.

9. The parties must both be fiduciaries because (1) only defendant fiduciaries may be sued under this provision; and (2) the plaintiff is neither a participant nor a beneficiary of the health benefit plan, and will thus have standing only if it is a fiduciary. *See* 29 U.S.C. § 1132(a)(2).

Agreement. As regards the defendant, it was vested with the discretionary authority to administer and manage the plan and its assets.[10] The plaintiff argues, however, that the defendant was not acting in its fiduciary capacity with respect to the issues raised in the complaint. The Court, however, has heretofore stated is disagreement with this position. As previously noted, the defendant was exercising its control over the disposal and management of plan assets when it allegedly failed to procure, or advise the plaintiff to procure, additional stop-loss insurance with plan assets under its control.[11] Moreover, there is little doubt that the defendant was exercising administrative discretion in its handling of provider discounts in so far as such discounts touch upon core plan functions, such as reporting and disclosure.

The plaintiff, too, is a fiduciary.[12] Indeed, it was the plaintiff's responsibility to establish and maintain the plan. The plaintiff was also entrusted with employee funds for remittance to the defendant, along with any employer contributions, in the form of monthly payments to the operating account. Moreover, the plaintiff exercised its discretion in hiring the defendant as insurer and co-fiduciary of the plan. Finally, the plaintiff had the authority to determine participant eligibility, Answer, Exh. 1, ASO Agreement § II.A at 12, and terminate the plan upon thirty days notice. *Id.* § X.D at 39.

From the foregoing, it is clear that both parties are fiduciaries and that the plaintiff is asserting a cause of action under the civil enforcement provisions of ERISA. In such cases, "the federal courts will have exclusive jurisdiction over the plaintiff's claims."

*Great Coastal,* 782 F.Supp. at 307; *accord Taylor,* 481 U.S. at 64–67, 107 S.Ct. at 1546–48.

## VI.

The record before the Court establishes that the plaintiff's claims are preempted by ERISA and fall within ERISA's civil enforcement provisions. On this basis, the Court concludes that the plaintiff's state law claims are completely preempted by ERISA. Accordingly, the plaintiff's motion to remand this matter to state court will be denied.

---

10. For example, the defendant had the sole discretion to determine the extent to which a participant was entitled to benefits. Answer, Exh. 1, ASO Agreement § X.B at 39. It also had the discretion to amend or terminate the ASO Agreement. *Id.* at § X.D.

11. Moreover, as indicated by the defendant, several courts have held that insurance brokers are fiduciaries under ERISA. *See Brink v. DaLesio,* 496 F.Supp. 1350 (D.Md.1980) *rev'd in part on other grounds,* 667 F.2d 420 (4th Cir.1981); *Reich v. Lancaster,* 843 F.Supp. 194 (N.D.Tex. 1993). These cases differ from the instant matter in that the insured party in each case was the plan itself; thus, the policies were plan assets.

Nevertheless, given that plan assets are, in fact, at issue in the instant matter, albeit in a somewhat different form, the conclusion of the *Brink* court bears upon this Court's analysis:

> [I]t is apparent that responsibility for important decisions pertaining to the scope of insurance coverage and the selection of carriers were delegated to [the broker]. In order to afford plan participants and beneficiaries the protection that Congress intended, insurance consultants such as [the broker] must be held to fiduciary standards.

496 F.Supp. at 1375.

12. Nowhere does the plaintiff deny that it is a fiduciary, as defined at 29 U.S.C. § 1002(21)(A).