United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

—————

No. 04-30986

—————

BANK OF LOUISIANA,

Plaintiff - Appellant,

versus

AETNA US HEALTHCARE INC; AETNA LIFE INSURANCE
COMPANY,

Defendants - Appellees.

Appeal from the United States District Court
For the Eastern District of Louisiana

Before REAVLEY, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Bank of Louisiana ("the Bank") appeals a summary judgment for the defendants Aetna

US Healthcare and Aetna Life Insurance (collectively "Aetna"). The issue on appeal is whether the

Bank's state law claims of detrimental reliance, breach of contract, and misrepresentation are

preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA").

I

In 1995, the Bank contracted to have Aetna administer and provide stop-loss insurance for

its self-insured employee benefit plan ("the Plan").[1]  The stop-loss policy provided an "individual" or "specific stop-loss amount" of $50,000 and an "aggregate stop-loss amount" of $600,000.[2]  The stop-loss coverage was scheduled to terminate on December 31, 2000.

The Bank, however, reached the aggregate stop-loss amount in 2000.  Late in that year, the parties met to form a new contract that would provide fully-insured coverage commencing on January 1, 2001.  The Bank also purchased an extension on its stop-loss coverage that would apply to claims incurred in 2000 and for which benefits would be paid during the first three months of 2001.  In a letter from account representative Stacy McMahon, Aetna stated that the stop-loss extension would mean that the Bank would "have no additional claim liabilities for 2000 and no additional fund transfers will be requested."  McMahon further stated that Aetna would "start wiring [the Bank's] account for claims paid during the runoff period and [the Bank would] be reimbursed at year-end."

---

[1] The parties do not dispute that this qualifies as an ERISA plan.  *See* 29 U.S.C. § 1002(1) (defining employee welfare benefit plans subject to ERISA).

[2] The distinction between an individual or specific stop-loss amount and the aggregate stop-loss amount is described in Troy Paredes, Note, *Stop-Loss Insurance, State Regulation, and ERISA: Defining the Scope of Federal Preemption*, 34 HARV. J. LEGIS. 233, 249 (1997), as follows:

> There are two types of stop-loss insurance.  Specific stop-loss insurance covers a plan against the risk that a particular participant's claims will exceed some specified level. For example, if the insurance kicks in when an individual's claims exceed $20,000 per year and a participant has bona fide claims of $30,000, the plan's stop-loss insurer covers $10,000 of the person's claims. Alternatively, aggregate stop-loss insurance covers a plan against the risk that the sum of all of its participants' claims will exceed some specified level. For example, if the insurance kicks in when aggregate claims exceed $2 million per year and claims under the plan total $2.5 million, the stop-loss insurer covers $500,000 of the claims.

*See also* Dennis K. Schaeffer, Comment, *Insuring the Protection of ERISA Plan Participants: ERISA Preemption and the Government's Duty to Regulate Self-Insured Health Plans*, 47 BUFF. L. REV. 1085, 1108-09 (1999) (discussing difference).

During the three month run-off period, the Bank submitted $271,628.38 in net claims incurred by plan members in 2000. (R. 177, 181, 218, 243.) Aetna drafted the Bank's account for these claims over the course of 2001 and 2002. Five of these drafts occurred during the three-month stop-loss extension period, totaling $102,720.06. Nevertheless, Aetna declined to reimburse the Bank.

The Bank filed a complaint alleging that Aetna had negligently or fraudulently "misrepresented the value and benefit of its payment" to Aetna for the stop-loss policy. In particular, the Bank first claimed that Aetna misrepresented that, pursuant to the stop-loss policy, Aetna would reimburse the Bank for the $271,628.38 that it drafted from the Bank's account. Second, the Bank alleged that Aetna had falsely represented that Aetna would reimburse the Bank for the $271,628.38 in charges and that the Bank had detrimentally relied on this representation. Third, the Bank alleged that Aetna had breached a contract to reimburse it for the $271,628.38 of account drafts. Fourth, the Bank alleged that Aetna had breached its fiduciary duties as plan administrator by delaying the processing of claims to remove them from the stop-loss coverage. Finally, in an amended complaint, the Bank alleged that Aetna had violated Louisiana Revised Statutes 22:658[3] and 22:1220.[4]

Aetna moved for summary judgment on the ground that the Bank's claims were preempted by ERISA. In a series of briefs, Aetna argued that ERISA preempted claims between an employer and a plan administrator. (R. 930.) The Bank responded that its claim of detrimental reliance and a claim for attorney's fees under Louisiana Revised Statute 22:657, the latter of which it had not

---

[3] Louisiana Revised Statute 22:658 requires insurers issuing certain types of policies to pay the amount of claims due within thirty days of proof of the loss.

[4] Louisiana Revised Statute 22:1220 imposes upon insurers a duty of good faith and fair dealing.

pled,[5] were not preempted because they exclusively involved parties providing services to an ERISA plan in a non-fiduciary capacity. (R. 635, 882.) The Bank withdrew its breach of fiduciary duty claim[6] and abandoned its claims under Louisiana Revised Statute 22:658 & 22:1220. The district court held that ERISA preempted all of the Bank's remaining claims and granted summary judgment for Aetna.

## II

In reviewing a summary judgment, we apply the same standard as the district court. *Martin v. Alamo Community Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). We affirm only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements. *Id.* We review the district court's legal determination that ERISA preempts a state law claim *de novo*. *Bullock v. Equitable Life Assurance Soc'y of the United States*, 259 F.3d 395, 399 (5th Cir. 2001).

## A

ERISA's preemption clause, 29 U.S.C. § 1144(a), states that with certain exceptions, ERISA

---

[5] Louisiana Revised Statute 22:657 provides that claim arising under the terms of health and accident contracts must be paid within thirty days of the date that the insurer receives written notice and proof of the claim. Failure to comply renders the insurer liable for penalties and attorney's fees. Aetna does not argue that the Bank's failure to properly plead this claim warrants affirmance.

[6] *See* District Court's Order and Reasons at 2 n.1 (July 9, 2003) (noting that the Bank had "indicated its intention to withdraw the breach of fiduciary duty claim"); Bank of Louisiana's Memorandum Regarding ERISA Preemption at 3 n.2 (Apr. 23, 2003) ("[W]e concede that BOL's Count Four, claiming breach of fiduciary duty, may be preempted by ERISA. Because the Count adds nothing to the gravamen of BOL's complaint, we will withdraw that Count without prejudice.").
Because the Bank has withdrawn its claim that Aetna delayed paying health care benefits, and a default to perform the stop-loss policy is not covered by the statute, the Bank's claim for attorney's fees under Louisiana Revised Statute 22:657 fails.

"shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.' " *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The Court has held that a state law "relates to an ERISA plan 'if it has a connection with or reference to such a plan.' " *Id.* at 147 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). Simultaneously, however, the Court recognizes that, given its broadest reading, the phrase "relate to" would encompass virtually all state law, and that its "connection with" and "reference to" interpretations are "scarcely more restrictive." *Id.* at 146-47. The Court has, therefore, declined to apply an "uncritical literalism" to the phrase and instead takes the "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 147 (internal quotation marks omitted).

> Congress's objectives in enacting ERISA were to
>
> protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). To this end, ERISA's preemption provision is intended "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff*, 532 U.S. at 148 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). A uniform administrative scheme serves to minimize administrative and financial burdens by avoiding the need to tailor plans to the peculiarities of the law of each state.

5

*Ingersoll-Rand Co. v. McClendon,* 498 U.S 133, 142 (1990).

In light of these statutory objectives, this court applies a two-prong test to the defense of ERISA preemption. A defendant pleading preemption must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities)) the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004). Because ERISA preemption is an affirmative defense, Aetna bears the burden of proof on both elements. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (ERISA preemption is a defense); *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508 (10th Cir. 1991) (defendant bears burden of proving ERISA preemption); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n.4 (9th Cir. 1988) (same).

Aetna argues that the Bank's claims require inquiry into the administration of the Plan)) an area of exclusive federal concern)) because some of the drafts on the Bank's account were for benefit claims paid after the stop-loss extension expired. Aetna contends that the Bank intends to prove that these drafts nonetheless fall within the stop-loss extension because they arise from benefit claims that Aetna improperly delayed processing. To the extent that the Bank intends to prove its claims through evidence that Aetna improperly administered the Plan, Aetna is correct that they would require inquiry into an area of exclusive federal concern. *See Hollis v. Provident Life and Accident Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001) (right to receive benefits under an ERISA plan is an area of exclusive federal concern); *Hubbard v. Blue Cross & Blue Shield Ass'n,* 42 F.3d 942, 946 (5th Cir. 1995) (claim that would require inquiry into how benefit claims were processed implicates area of federal concern). There is, however, evidence that Aetna drafted the Bank's account multiple times

during the stop-loss extension. Because those drafts occurred during the stop-loss extension, the Bank need not prove that Aetna improperly delayed processing these claims to recover. Accordingly, Aetna has established the first element of the defense of preemption as a matter of law only to the extent that the Bank's intends to rely upon evidence that Aetna delayed processing claims for benefits.[7]

Aetna argues that the second element of its defense is satisfied as a matter of law because the parties are two traditional ERISA entities ) ) an employer and a plan administrator. The Bank contends, however, that Aetna was acting in its capacity as a vendor of insurance, not as a fiduciary of the Plan. For purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA. As we have noted, ERISA may preempt some claims between traditional ERISA entities but not others.[8] And a party may qualify as an ERISA fiduciary with regard to some claims but not others. *See Pegram v.*

---

[7] Although the district court concluded that the claims implicate an area of exclusive federal concern because they "all pertain to the terms of an ERISA-governed plan and will require the examination of the plan terms," there is nothing in the summary judgment record to support that conclusion. Neither Aetna nor the district court identified what portion of the agreement between the parties is in dispute. *Cf. Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990) (claim for fraud and misrepresentation in the procurement of an ERISA plan are not preempted).

[8] *See Hobson v. Robinson*, 75 Fed.Appx. 949, 955 (5th Cir. 2003) (unpublished) (party may be a fiduciary with regard to some claims but not others); *Smith v. Tex. Children's Hosp.*, 84 F.3d 152 (5th Cir. 1996) (fraudulent inducement claim against employer not preempted while breach of contract claim was preempted); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 783 (5th Cir. 1994) (ERISA does not preempt all state law claims between an employee and an employer, merely because the employer administers an ERISA plan to which the employee belongs); *Sommers Drug Stores Co. v. Employee Profit Sharing Trust*, 793 F.2d 1456 (5th Cir. 1986) (claim for common law breach of corporate fiduciary duty was not preempted by ERISA, even though the defendant/corporate director was an ERISA plan fiduciary and the plaintiffs/employees were plan beneficiaries).

7

*Herdrich*, 530 U.S. 211, 225-26 (2000) (ERISA defines party as fiduciary "only 'to the extent' that he acts in such a capacity in relation to a plan") (quoting 29 U.S.C. § 1002(21)(A)). "[T]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." *Hobson*, 75 Fed.Appx. at 954.

Aetna argues that it is an ERISA fiduciary because the Bank has delegated to it the discretionary responsibility to administer the Plan.[9] The Bank correctly contends, however, that Aetna was not acting in a fiduciary capacity when it represented to the Bank which claims would be covered by the stop-loss insurance policy extension. The duties that Aetna has allegedly breached in negotiating the stop-loss policy were owed to the Bank, the benefits of stop-loss insurance inure solely to the Bank, and Aetna cites no evidence that the stop-loss policy is a plan asset or was purchased with plan assets. *Cf.* DEPARTMENT OF LABOR ADVISORY OPINION 92-02A, *available at* 1992 WL 15175 (stop-loss policy is not a plan asset). *But cf. Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (checks for stop-loss benefits are plan assets).

Aetna identifies no cases holding that a stop-loss insurer is necessarily a plan fiduciary. The majority of cases are to the contrary. For example, the Ninth Circuit held in *Geweke Ford v. St. Joseph's Omni Preferred Care Inc*., 130 F.3d 1355 (9th Cir. 1997), that a plan's relationship to its

---

[9] A party acts in a fiduciary capacity when he: 1) exercises discretionary control over plan assets; 2) he renders investment advice for a fee to the plan; or 3) he has discretionary responsibility with regard to plan administration. 29 U.S.C. § 1002(21)(A); *see also Tri-State Mach., Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309, 313-14 (4th Cir. 1994) (claims by employer against plan administrator and stop-loss insurer for delaying the processing of claims are preempted); *Iron Workers Mid-South Pension Fund v. Terotechnology Corp*., 891 F.2d 548, 553 (5th Cir. 1990) ("the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is 'part of the administration of an employee benefit plan' " (quoting *Martori Bros. Distrib. v. James-Massengale*, 781 F.2d 1349, 1358 (9th Cir. 1986))).

stop-loss insurer is like that between any commercial entities and is not regulated by ERISA.[10] The

reasoning of these courts is persuasive and consistent with our own. The Bank's claims implicate

Aetna's responsibilities with respect to Plan administration only to the extent they challenge Aetna's

processing of benefit claims.[11]

III

For the foregoing reasons, we reverse the district court's grant of summary judgment on the

---

[10] *See also Seneca Beverage Corp. v. HealthNow N.Y., Inc*., 383 F.Supp.2d 413, 423 (W.D.N.Y. 2005) (stop-loss insurer is not a fiduciary); *Northern Kare Facilities/Kingdom Kare, LLC v. Benefirst LLC*, 344 F.Supp.2d 283, 287 (D.Mass. 2004) (same); *Deeter v. Greene, Tween and Co., Inc*., CIV. A. 98-1222, 1998 WL 639190 (E.D. Pa. Sept. 18, 1998) (same); *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429, 432-36 (S.D. Miss. 1995) (same).

[11] Aetna relies on *Tri-State Machine, Inc. v. Nationwide Life Insurance Co.*, 33 F.3d 309 (4th Cir. 1994), but that case is not to the contrary. Tri-State Machine, an employer, sued Nationwide Life Insurance, the administrator and stop-loss insurer for its ERISA plan. Tri-State alleged that Nationwide Life "delayed processing claims in years when the stop-loss limit had been reached in order to deflect them into a new policy year to be charged against Tri-State under its self-funding obligations." *Id.* at 314. The Fourth Circuit held that such an allegation was essentially a challenge to a plan administrator's processing of claims and therefore related to the plan. *Id.* In the present case, however, the Bank has abandoned its claim that Aetna breached its fiduciary duties by delaying the processing of claims. The wrong the Bank seeks to recover for in the remaining claims is Aetna's failure to reimburse it as it represented that it would pursuant to the stop-loss policy. Such a claim does not concern the processing of claims for benefits.

The Fourth Circuit's cases are consistent with our reasoning that the parties are not fiduciaries with respect to the Bank's claims. In *Phelps v. C.T. Enterprises, Inc*., 394 F.3d 213, 219 (4th Cir. 2005), the court "emphasized that fiduciary duty under ERISA is not an all-or-nothing concept." *See also Cotton v. Mass. Mutual Life Ins. Co*., 402 F.3d 1267, 1277 (11th Cir. 2005) (fiduciary status under ERISA not an "all-or-nothing concept").

*Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*, 867 F.Supp. 398 (E.D. Va. 1994), is also distinguishable. The employer in *Broadnax Mills* sued the plan administrator and stop-loss insurer on the ground that it negligently failed to advise it to obtain an aggregate stop-loss policy and breached the Plan's Administrative Service Agreement. In *Broadnax Mills,* it was conceded that the stop-loss insurance was purchased by funds contributed by plan participants and therefore concerned the disposal of plan assets. *See id.* at 403. Aetna points to no similar concession in this case. The plaintiff in *Broadnax Mills* also alleged that the plan administrator breached its duty to disclose and report the financial status of the plan. *Id.* at 403-04. The Bank's claims do not involve similar allegations.

Bank's claims of detrimental reliance, breach of contract, and misrepresentation; affirm the grant of summary judgment on the Bank's Louisiana Revised Statute 22:657 claim; and remand for proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

REAVLEY, Circuit Judge, specially concurring:

I concur in the judgment because this appeal is by the Bank against Aetna US Healthcare Inc., the issuer of the stop-loss policy. That party is separate from Aetna Life Insurance Co., the plan administrator with fiduciary responsibility.

11